45 F.3d 205
 148 L.R.R.M. (BNA) 2261
 BPS GUARD SERVICES, INCORPORATED, doing business as Burns
International Security Services, Plaintiff-Appellant,
v.
INTERNATIONAL UNION OF UNITED PLANT GUARD WORKERS OF
AMERICA, LOCAL 228, Defendant-Appellee.
 No. 94-1195.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 3, 1994.
Decided Jan. 18, 1995.
 
 Alan S. Madans, Roger J. Guerin, argued, Rothschild, Barry & Myers, Chicago, IL, for plaintiff-appellant.
 Scott Brooks, argued, Gregory, Moore, Jeakle, Heinen, Ellison & Brooks, Detroit, MI, for defendant-appellee.
 Before FAIRCHILD, CUMMINGS and EASTERBROOK, Circuit Judges.
 FAIRCHILD, Circuit Judge.
 
 
 1
 Plaintiff-appellant BPS Guard Services, Inc., d/b/a Burns International Security Services ("Burns"), appeals the district court's finding of contempt for failure to abide by an award of an arbitrator and its grant of relief, including an award to defendant-appellee International Union of Plant Guard Workers, Local 228 ("the Union") of its attorney fees and costs. We affirm.
 
 I.
 
 2
 Burns provides guard services for Commonwealth Edison's Braidwood Nuclear Generating Station ("Braidwood") in Braidwood, Illinois. Karen Sullivan ("Sullivan") was employed by Burns as a nuclear security officer (also referred to as a "watchperson" or "firewatch employee") at Braidwood. On January 22, 1988, Sullivan was found away from her assigned area. Burns fired Sullivan, and that month, Commonwealth Edison revoked Sullivan's unescorted site access.
 
 
 3
 The Union filed a grievance on Sullivan's behalf, and the matter went to arbitration pursuant to the parties' collective bargaining agreement. On July 6, 1989, the arbitrator ruled that Burns did not have "just cause," as provided in the collective bargaining agreement, to discharge Sullivan. The arbitrator ordered Burns "to reinstate her to her former position, to restore her seniority and to make her whole for the earnings she lost from November 3, 1988[1] until her reinstatement pursuant to this Award...." If the award of reinstatement to her former position meant location at Braidwood (rather than some other duty with similar compensation and benefits), such reinstatement could only be achieved with Commonwealth Edison's consent to Sullivan's access to Braidwood.
 
 
 4
 On October 4, 1989, Burns commenced an action to vacate the arbitration award on the ground that it violated public policy. The Union counterclaimed for enforcement of the arbitration award. On May 3, 1990, the district court upheld the award. B.P.S. Guard Services v. International Union, UPGWA, 735 F.Supp. 892 (N.D.Ill.1990). Burns, which had made no point before the arbitrator or the district court that reinstatement to the Braidwood job was dependent on Commonwealth Edison's consent, did not appeal.
 
 
 5
 Burns did not reinstate Sullivan, but did request, by letter dated June 29, 1990 (eight weeks after the district court enforced the arbitration award), that Commonwealth Edison restore Sullivan's site access.[2]
 
 
 6
 By letter dated November 26, 1990, Commonwealth Edison informed Burns that it would not do so. On December 7, Burns notified Sullivan that she was being placed on lay-off status. By letter dated December 21, Burns offered Sullivan positions at two different locations; Sullivan did not accept either offer. Burns provided Sullivan backpay for the period of November 3, 1988, through November 26, 1990 (the date on which Commonwealth Edison refused to grant Sullivan site access).
 
 
 7
 There was correspondence between counsel for the Union and for Burns regarding enforcement of the award. After the Union requested further action by Burns, Burns' counsel responded that contempt proceedings were not appropriate because a similar action (an arbitrator ordered reinstatement of an employee, but his site access was not restored) had been remanded to the arbitrator for further proceedings. In a March 8, 1991 letter, the Union's counsel asked Burns to respond in writing "as to Burns Security's willingness with respect to having all matter[s] resolved by Mr. Archer [the arbitrator]." In an April 2 letter, Burns' counsel did not respond to this request; counsel stated that Sullivan is not qualified to work as a nuclear security guard, and therefore he was closing his file. In an April 19 letter, the Union's counsel noted that Burns had not responded to its request regarding arbitration, and stated that "by your lack of response, [I assume that Burns] refuses to return the matter to Mr. Archer for resolution." Burns did not reply to this letter.
 
 
 8
 On April 30, the Union filed a motion, contending that Burns should be found in contempt for its failure to pay Sullivan after November 26, 1990. On December 2, 1992, Magistrate Judge Rosemond issued his report and recommendation to the district court. The magistrate judge concluded that Burns' defense to contempt (of factual impossibility) was "wholly without merit," because Burns had failed to present the defense to the arbitrator. The magistrate judge noted that Sullivan could be reinstated as a Burns security officer, and assigned to a different facility. He recommended that the district judge order Sullivan's reinstatement on or before January 4, 1993; order Burns to give Sullivan backpay until her reinstatement; order Burns to pay the Union's attorney fees; and fine Burns $1,000 a day for each day after January 4 that it failed to reinstate Sullivan.
 
 
 9
 On August 3, 1993, the district court adopted the recommendation, with the exception of the fine, and later awarded backpay to Sullivan and attorney fees to the Union.
 
 
 10
 In October 1993, Sullivan accepted Burns' offer of employment at a location other than Braidwood, with Braidwood rate of pay and benefits, but immediately resigned (for reasons unknown to us).
 
 II.
 A. Contempt, Backpay and Reinstatement
 
 11
 Burns argues that because Commonwealth Edison, an independent party, decided that it would not grant Sullivan site access, it was impossible for Burns to comply with the arbitrator's award by reinstating Sullivan.
 
 
 12
 Our problem arises because the parties interpret the award differently. Burns contends that "reinstatement to her former position" meant reinstatement as a nuclear security officer at Braidwood. Under this interpretation, Commonwealth Edison's refusal of consent would render that assignment impossible, and the award would literally require Burns to pay Sullivan indefinitely the earnings she would have had. The Union argues that compliance with the award was not impossible, because Burns, having failed to assign Sullivan to a position, could simply continue to pay her.
 
 
 13
 Perhaps the arbitrator, if the question had been put to him, would have said that he meant reinstatement to the position at Braidwood or an equivalent position on Burns' payroll, so that if Burns had offered an equivalent position, its obligation to make her whole for lost earnings would cease. The Union does accept that Burns' October 1993 reemployment of Sullivan ended Burns' obligations under the award. Either of the above interpretations would sustain the court's order now being appealed.
 
 
 14
 Burns contends that it took action to reinstate Sullivan at Braidwood by making what it called its "formal request" for restoration of Sullivan's access. It essentially urges a construction of the award so that although the award says, "make her whole ... until her reinstatement," Burns need not continue paying her after Commonwealth Edison made her return to Braidwood impossible. This interpretation strains the exact language the arbitrator used and there is no reason to prefer it.
 
 
 15
 We do not know how the arbitrator would have initially phrased the award if Burns had brought to his attention that reinstatement at Braidwood would be dependent on Commonwealth Edison's decision on access (perhaps, in fact, dependent on Burns' willingness to persuade Commonwealth Edison that Sullivan had been rehabilitated by her eight months without pay and that her future performance would be appropriate).
 
 
 16
 Burns was well aware at the time of arbitration that reinstatement to duties at Braidwood could not occur without Commonwealth Edison's restoration of access. Yet it did not press that point to the arbitrator, nor did it seek remand to the arbitrator when the district court considered its challenge to the award and the Union's application for enforcement. Burns did not seek clarification after the denial of access, and rebuffed the Union's suggestion concerning resubmission. Under these circumstances, we hold that Burns has waived its claim for the interpretation it seeks. Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731, 990 F.2d 957, 960-61 (7th Cir.1993); United Food & Commercial Workers Local 100A v. John Hofmeister and Son, Inc., 950 F.2d 1340, 1343-44 (7th Cir.1991), and cases cited therein.
 
 
 17
 We also note that it is questionable whether Burns made a good faith effort to restore Sullivan to her former position at Braidwood. The letter Burns wrote to Commonwealth Edison requesting restoration of Sullivan's site access at most is a grudging recognition of Burns' duty to comply with the award. It can also be read as a virtual invitation to Commonwealth Edison to deny Sullivan's access and thus deny her reinstatement at Braidwood.[3]
 
 
 18
 We review the district court's ruling on the Union's contempt petition for an abuse of discretion. Badger Meter, Inc. v. Grinnell Corp., 13 F.3d 1145, 1154 (7th Cir.1994); Chrysler Motors Corp. v. Int'l Union, Allied Indus. Workers of America, 2 F.3d 760, 762 (7th Cir.1993). The district court abused its discretion if it made an error of law or based its decision on a clearly erroneous finding of fact. Badger Meter, 13 F.3d at 1154-55. We conclude that the district court did not abuse its discretion when it rejected Burns' impossibility defense.
 
 
 19
 Burns further argues that (1) since the collective bargaining agreement only pertained to Braidwood, it was not obligated to find Sullivan a position at a facility not covered by the agreement; if the award had required such action, it would not have drawn its essence from the agreement;[4] (2) the district court erred when it ordered Burns to provide backpay at Braidwood rates, although Sullivan could not work there; (3) because its agreement with the Union expired in May 1991,[5] the Union had no further obligation to Sullivan after that date; and (4) it was not obligated to pay Sullivan's backpay at the rate provided in the new agreement between Burns and the union which now represents the Braidwood workers.[6]
 
 
 20
 Neither party can point us to a case in which an arbitrator ordered an employee to be reinstated to a position at a location not covered by the collective bargaining agreement which gives rise to the arbitration. We see no reason why this remedy would not be within the arbitrator's authority where the particular job from which the employer had wrongfully discharged the employee was no longer available.
 
 
 21
 Burns' argument that it had no obligation to pay Sullivan at the new Braidwood rate after the agreement expired misses the point. The relief ordered by the court is for Burns' failure to reinstate at the time of the award. Of course at that time the collective bargaining agreement between the parties was still in force. If Burns had then reinstated her at Braidwood, and unless she had been fired for cause, had quit or died, she would have gone on to be paid under the collective bargaining agreement between Burns and the new union. We think that in awarding relief for Burns' violation of the award the court could make that assumption.[7]
 
 
 22
 All of the above issues involve disputes over the obligations the award imposes on Burns. We find helpful analysis from case law which discusses enforcement proceedings involving ambiguous awards. As a general proposition, a district court should not attempt to interpret an ambiguous award. Teamsters Local No. 579 v. B & M Transit, Inc., 882 F.2d 274, 278 (7th Cir.1989) (appeal from a judgment confirming an award). "When possible, however, a court should avoid remanding a decision to the arbitrator because of the interest in prompt and final arbitration." Id.; Ethyl Corp. v. United Steelworkers of America, 768 F.2d 180, 188 (7th Cir.1985), cert. denied, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986) (action to set aside an award; counteraction to enforce it); see also United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960) ("A mere ambiguity in the opinion accompanying the award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award."). In the present case, the argument about interpretation was not raised at the time of confirmation of the award, but in a proceeding for contempt for failure to comply.
 
 
 23
 This court must resolve issues stemming from an incident which took place almost seven years ago. The delay is due in part to Burns. See, e.g., footnote 1. Additionally, because Burns failed to inform the arbitrator of information relevant to formulating an award, the arbitrator did not explicitly provide for the contingency of continued denial of access. Burns' only basis for setting aside the award was its public policy argument. Finally, Burns ignored inquiries from the Union about remand to the arbitrator, prior to commencement of the present proceedings. This matter should have been laid to rest long ago; additional arbitration would further prolong resolution. Under the circumstances it does not seem fair to fault the district court for failure to remand for clarification, as Burns suggests.
 
 B. Mitigation
 
 24
 Burns made two offers to employ Sullivan at jobs other than Braidwood. These jobs would not fulfill the "reinstatement" awarded. Burns does argue that her "rejection of these positions constituted an unacceptable failure to mitigate her damages." Br. at 24. Burns did not otherwise attempt to show that Sullivan failed to use reasonable diligence in finding other suitable employment. See Ford Motor Co. v. EEOC, 458 U.S. 219, 231-32 nn. 15-16 & 18, 102 S.Ct. 3057, 3065-66 nn. 15-16 & 18, 73 L.Ed.2d 721 (1982). One offer was for a guard position at Huntsman Plastic; the position had a lower rate of pay than Braidwood, and no benefits (Braidwood benefits included insurance, among other things). A second offer was for a watchperson position in the Burns office in Lisle, Illinois, which was approximately eighty miles from Sullivan's home. That position included the same rate of pay and benefits as at Braidwood. Sullivan would not receive mileage or travel time compensation. Neither position was substantially equivalent to that at Braidwood.
 
 
 25
 It is not clear that Burns left Sullivan free to reserve her claim to be made whole under the award if she accepted one of the positions offered. After attempts to find employment elsewhere, Sullivan apparently indicated willingness to consider the lower paying Huntsman Plastic job, without waiving her claim, but Burns replied that the job was no longer available. See Oct. 8, 1993 Union Resp. at 11 and March 23, 1993 Letter (attached to Resp.).
 
 
 26
 The district court found that Burns did not carry its burden of proof to establish that Sullivan failed to mitigate her damages. The standard of review is whether the finding on mitigation was clearly erroneous. Payne v. Security Sav. & Loan Ass'n, F.A., 924 F.2d 109, 111 (7th Cir.1991) (age discrimination case). The finding here was not clearly erroneous.
 
 C. Attorney Fees
 
 27
 Burns argues that the district court erred in awarding the Union attorney fees and costs in the amount of $6,803.79, and that the Union did not adequately support its petition for fees.
 
 
 28
 The Union sought an award of attorney fees for services after the filing of Burns' petition to vacate the arbitration award. The district court, however, only awarded fees for services after the date of the magistrate judge's recommendation regarding contempt.
 
 The district court noted that
 
 29
 [t]he documentation of the fees is not in the form ordinarily required by this court, as most of the bills do not reflect the hours expended. The rates are, however, exceedingly modest and the totals are themselves modest ... we see no purpose in returning the fee petition back to the parties to reconstruct time records.
 
 
 30
 Dec. 27, 1993 Mem. and Order at 2-3.
 
 
 31
 A district court may award attorney fees related to a civil contempt proceeding. See Squillacote v. Local 248, Meat & Allied Food Workers, 534 F.2d 735, 748 (7th Cir.1976). Here, both the magistrate judge and the district court judge concluded that given Burns' conduct in this action, an award of attorney fees to the Union is appropriate.
 
 
 32
 Burns recognizes that the attorney fees are "modest," but asserts that the Union's counsel "should have, but did not, provide a daily breakdown of each attorney's hours and services." The Union's attorneys filed with the district court the bills which were submitted to the Union, which reflect dates and brief descriptions of the work performed; much of the documentation for the relevant period does include amount of time spent on each entry. Under the circumstances, it was reasonable not to require further documentation.
 
 
 33
 We conclude that the district court did not err in awarding attorney fees and costs to the Union. We do not, however, consider this appeal frivolous, and decline the Union's request to award it attorney fees related to this appeal.
 
 
 34
 Accordingly, we AFFIRM.
 
 
 
 [1]
 The date of an interim decision regarding arbitrability. The arbitrator noted that Burns, by objecting to arbitrability on grounds "bordering on frivolous," "unduly delayed the ultimate resolution of this case." July 6, 1989 Decision and Award. The arbitrator deemed the unpaid suspension, up to the point when he would have ordered her reinstatement on November 3, 1988, an appropriate sanction for her unauthorized absence
 
 
 [2]
 The letter reads:
 This has reference to the above-cited Braidwood firewatch employee. As you are aware, Burns terminated Karen Sullivan's employment as a result of abandonment of her post on January 21-22, 1988. The Union filed a grievance in this matter and the case was submitted to arbitration. The matter was heard before Arbitrator Edward Archer. On July 6, 1989, Arbitrator Archer issued an award wherein he ruled that Burns did not have just cause to terminate Karen Sullivan's employment and further ordered Burns to reinstate Karen Sullivan's employment. Burns filed a motion to have the above arbitrator's decision vacated on the grounds that the order to reinstate Sullivan was violative of the established public policy to provide safe and secure environments at nuclear plants.
 Under date of May 3, 1990, Judge Nicholas Bua of the U.S. District Court of Northern Illinois denied Burns' Motion to Vacate the above arbitrator's award and granted the Union's motion in support of the arbitrator's award whereby Burns is required to reinstate Karen Sullivan. In its decision, the Court held that the reinstatement of Sullivan did not violate public policy. It is very doubtful that appealing this case would have resulted in a reversal of the District Court's decision. To the contrary, an appeal, should the Appellate Court elect to hear the matter, could have resulted in additional adverse and unfavorable language in the decision.
 Accordingly, mindful of the foregoing, please accept this as a formal request to initiate the necessary procedures on the part of Commonwealth Edison in order to grant unescorted access to Karen Sullivan at the Braidwood facility in order that Burns may comply with the Arbitrator's award and the subsequent decision of the District Court relative to same.
 
 
 [3]
 See footnote 2 for the full text of the letter
 The following discussion between this court and counsel took place at oral argument:
 Why did it [Burns] have to say what the grounds of its motion to set aside the arbitrator's decision were, which it says?
 ....
 Well, this was a matter which involved a reporting requirement with the Nuclear Regulatory Commission, and they [Burns] were trying to advise Commonwealth Edison that they had taken what steps they deemed were appropriate to keep her off the site because they still believed she was a security risk.
 
 
 [4]
 An arbitrator's "award is legitimate only so long as it draws its essence from the collective bargaining agreement." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)
 
 
 [5]
 The National Labor Relations Board ruled that a "watchperson" was not a "guard" within the meaning of the National Labor Relations Act. The Union therefore could no longer represent employees in watchperson positions
 
 
 [6]
 Burns suggests that it would be appropriate to remand this action to the arbitrator because "Edison's refusal to restore site access privileges constituted a change of circumstances, and generated a new dispute between Burns and [the Union]." Br. at 18. The cases cited by Burns are inapplicable to the factual circumstances of this action. As discussed above, there is not a new dispute; rather, the same dispute regarding Sullivan's reinstatement, involving a condition which existed at the time of arbitration (Sullivan's lack of site access), remains
 
 
 [7]
 Burns cites to Polk Bros. v. Chicago Truck Drivers Union, 973 F.2d 593 (7th Cir.1992), for the proposition that the arbitrator had no authority to order backpay and/or reinstatement for a period after the collective bargaining agreement had expired. In Polk Bros., the court concluded that an arbitrator exceeded his authority under the language of collective bargaining agreements, when he ordered, after the agreements had expired and no subsequent agreements were entered into, that the company reinstate employees. We do not find Polk Bros. persuasive, as the facts of this case differ significantly. We also note that Burns did not cite to any case authority for this proposition until its reply brief