UNITED STATES of America, for and on Behalf of SMALL BUSINESS ADMINISTRATION, Plaintiff–Appellee,

v.

Rosee TORRES, et al., Defendants–Appellants.

Nos. 96–2477 & 96–2671.

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 11, 1997.

Decided April 17, 1998.

Thomas P. Walsh, Joan C. Laser, Office of the U.S. Attorney, Civil Division, Chicago, IL, for Plaintiff–Appellee in No. 96–2477.

Thomas P. Walsh, Office of the U.S. Attorney, Civil Division, Chicago, IL, for Plaintiff–Appellee in No. 96–2671.

Martin J. Wilson, Chicago, IL, for Defendants–Appellants in No. 96–2477.

Martin J. Wilson, Gregory R. LaPapa, Chicago, IL, for Defendants–Appellants in No. 96–2671.

Before COFFEY, MANION, and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

On May 20, 1993, the United States filed a mortgage foreclosure action against the defendants-appellants Rosee and Noel Torres, their daughter, Elisa Torres, and Rosee Torres's business, Legal Secretarial Services (collectively, "the Torreses"), arising out of Rosee Torres's alleged default on a 1984 Small Business Administration ("SBA") loan secured by a mortgage on property owned by Noel and Rosee Torres. The Torreses argued that, at the time the SBA loan was completed, the property mortgaged as security for the loan was in fact owned by a minor's spendthrift trust. Both parties filed summary judgment motions in the foreclosure action and on April 16, 1996, the district court granted the SBA's motion, finding that the defendants had failed to raise any genuine issue of material fact. In addition, the court found Rosee Torres in civil contempt for intentionally misdating a trial document

in an attempt to deceive the court into believing that the SBA had knowledge of the spendthrift trust's existence, and ordered Torres to pay $1,125 in attorney's fees as sanction for the misrepresentation. The Torreses appeal the court's rulings in granting the SBA's motion and the finding of Rosee in civil contempt. We affirm.

## I. BACKGROUND

Rosee Torres applied to the SBA for a small business loan, and on December 16, 1983, she was notified that she had been approved for a $100,000 loan, with a mortgage on her home to be used as collateral. Rosee and her husband, Noel, met with Susan Marchini ("Marchini"), the SBA representative responsible for the loan, on January 18, 1984. Marchini examined Noel and Rosee Torres' identification, and requested that they review the loan documents for truth and accuracy. An affidavit of ownership stated that Noel and Rosee Torres were the "record owner(s) and holder(s) of fee simple title" of their residence.[1] The mortgage form, a twenty-eight inch long SBA single-sheet paper document printed on both sides, also stated that Noel and Rosee Torres were the sole owners of their residence.[2] Marchini testified that after she witnessed both Rosee and Noel Torres sign the mortgage, she gave them an unsigned, undated copy, and retained possession of the original mortgage document.

Because Rosee failed to make monthly payments on the loan in a timely fashion, in August of 1987, the SBA accelerated the maturity of the loan note and declared the entire balance due and payable.[3] In May of 1993, the SBA filed a routine foreclosure on the mortgage that secured the loan. The Torreses answered the foreclosure action and asserted that the SBA could not foreclose because title to the property had been previously transferred to an unrecorded spend-

---

**1.** In addition, Marchini obtained a title search from Chicago Title Insurance dated January 23, 1984, which verified that Rosee and Noel Torres were the title holders of record of their home.

**2.** The residence in question is described in an appraisal certificate as a "Two Story Brick Bun-

galow" located at 3430 West Beach Street in Chicago.

**3.** Provisions of the note executed at the 1984 closing entitled the SBA to take this measure upon default.

thrift trust that was established in 1974 for their daughter, Elisa.[4]

The Torreses contended before the trial court that the SBA knew of the existence of the alleged trust at the time the loan was created. They offered the following several theories that imputed such knowledge. Initially, the Torreses attached to their answer what appeared to be an unsigned, undated copy of the mortgage provided to Noel and Rosee Torres at the closing. This copy of the mortgage, which the Torreses claimed to be the draft they received during the meeting with Marchini, surprisingly did not bear the signature of Noel Torres (as did the original, according to Marchini), but rather bore only the signature of Rosee Torres, and, more important, was dated prior to the date of the January 18, 1984, loan closing. Further, this copy of the mortgage contained Rosee Torres's handwritten references to Elisa Torres's spendthrift trust, in an attempt to demonstrate, according to the Torreses, that the SBA had knowledge of the existence of the trust. The Torreses' answer contained allegations that the SBA had, in providing documents to the court, substituted three of the four pages of the mortgage, all of which, according to the Torreses, originally contained references to the spendthrift trust. The Torreses also contended that the SBA had forged Noel Torres's signature on the draft the SBA provided to the court.

When the SBA brought to the Torreses' attention the fact that the mortgage document actually consisted of a single sheet of paper folded over, with printed material on both sides, rather than four separate pages, which made the alleged substitution an impossibility, the Torreses shifted strategy and argued that James Dall, the SBA attorney during the loan closing, promised to transfer

the handwritten comments regarding the trust to the original.[5] Rosee contended that since she did not have a private attorney at the closing, Dall in effect improperly represented both parties: Noel and Rosee Torres, and the SBA. The Torreses accused Jody Adler, another SBA attorney who worked on the Torreses' litigation, of participating in the 1984 loan transaction and having actual knowledge of the existence of the trust. In support of this proposition, the Torreses submitted a page from the 1985–1986 *Sullivan's Law Directory* which reflected Adler's employment with the SBA. Rosee Torres had written "1984 Sullivan's Law Directory" at the top of the page to show that Adler was employed by the SBA at the time of the loan.[6] In fact, Adler did not commence employment with the SBA until September 16, 1985, long after the creation of the loan.

On April 16, 1996, the district court issued an order granting the SBA's motion for summary judgment. Shortly thereafter, Rosee claimed that both Dall and Adler had represented the Torreses in private practice before their employment with the SBA. As a result, according to Torres, both had actual knowledge of the existence of the spendthrift trust. The coincidence arose, according to Rosee, because Dall managed and represented the trust while employed at the First National Bank of Chicago, prior to his employment with the SBA. Rosee further contended that after joining the SBA, Dall was assigned Noel and Rosee Torres' loan application, and realizing his conflict of interest, referred the trust to Adler, who was at that time in private practice. An affidavit from Rosee Torres specifically provides that Adler continued to represent the trust until she joined the SBA in 1984, when she began working as co-counsel with Dall. However, because Adler did not join the SBA until

---

4. The defendants offered several other defenses to the SBA's foreclosure action, including personal bankruptcy, statute of frauds violations on the part of the SBA, racial and ethnic discrimination, fraud, and forgery. On November 22, 1995, a district court order struck the defendants' defenses of ethnic discrimination, bankruptcy, and violations of the statute of frauds.

5. Rosee Torres argued that during the closing, she pre-signed four copies of the loan with assurance from Dall that the handwritten information

pertaining to the spendthrift trust would be transferred onto the original mortgage by an SBA typist.

6. The page of the directory submitted by Rosee and purported to be from the 1984 edition contains an entry immediately preceding Adler's which reads: "ADLER, HARRY R. Deceased June 21, 1985...." Unless coupled with proof of Sullivan's publishers' clairvoyance, Rosee's attempt to deceive the court is blatant and most disingenuous.

September of 1985, obviously she could not have been co-counsel with Dall. Further, the record reflects that Dall and Adler never worked at the SBA at the same time, and never knew each other.

On May 21, 1996, the court denied the Torreses' motion to vacate or reconsider, and entered a rule to show cause order as to why Rosee Torres should not be held in contempt of court for filing an incorrectly dated document from *Sullivan's Law Directory* in support of the motion. The order was followed by a judgment of foreclosure and sale.

On June 25, 1996, the district court found Rosee Torres in civil contempt of court for intentionally filing the incorrectly dated document, and on July 19, 1996, the court ordered Torres to pay $1,125 in attorney's fees to SBA's counsel.

## II. ISSUES

On appeal, the defendants argue that the district court lacked jurisdiction over this action because it was time-barred and the defendants were not proper parties. They also assert that the district judge erred, alleging that genuine issues of material fact existed warranting a trial, and further that the SBA had knowledge of the spendthrift trust at the time of the loan. They also assert that other issues of material fact are raised by their other defenses, which include racial and ethnic discrimination on the part of the SBA, personal bankruptcy, violations of the statute of frauds by the SBA, and forgery. Lastly, the Torreses claim that the trial judge abused his discretion in finding Rosee Torres in civil contempt for submitting to the court a misrepresented document.

## III. DISCUSSION

### A. *Jurisdiction*

Initially, the defendants argue that the district court did not have subject-matter jurisdiction over this matter. However, pursuant to 28 U.S.C. § 1345, the trial court has jurisdiction because the United States was suing to foreclose on a mortgage securing a defaulted SBA loan. Generally, district courts have original jurisdiction over suits brought by the United States to foreclose

mortgages on realty situated within the district. *See Garden Homes, Inc. v. United States*, 200 F.2d 299, 300 (1st Cir.1953). "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." 28 U.S.C. § 1345.

The defendants also contend that the court lacked jurisdiction because both Illinois statutes of limitation, providing ten years for written contracts, 735 Ill. Comp. Stat. Ann. 5/13–206, and five years for partially oral contracts, 735 Ill. Comp. Stat. Ann. 5/13–205, had expired prior to the filing of the Government's complaint. We hold, however, that this action is not time-barred "because state statutes of limitations are inapplicable to actions filed by the federal government." *United States v. Thornburg*, 82 F.3d 886, 894 (9th Cir.1996). "It is well settled that the United States is not bound by state statute of limitation or subject to the defense of laches in enforcing its rights.... The same rule applies whether the United States brings its suit in its own courts or in a state court." *United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940) (citations omitted).

Finally, the defendants argue that they are not proper parties to this dispute since they were neither the owners in fee simple nor the known record titleholders of the property in question. However, the Illinois foreclosure statute, 735 Ill. Comp. Stat. Ann. 5/15–1501(a), provides that "only (i) the mortgagor and (ii) other persons (but not guarantors) who owe payment of indebtedness or the performance of other obligations secured by the mortgage and against whom personal liability is asserted shall be necessary parties defendant in a foreclosure." Thus, because Rosee and Noel Torres were the mortgagors, we hold that they were not only the proper parties in this action, but that they were in fact necessary parties.

## B. *Summary Judgment*

We review the district court's grant of summary judgment de novo. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir.1997). "Summary judgment is appropriate when the record, viewed in a light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Vector–Springfield Properties, Ltd. v. Central Ill. Light Co.*, 108 F.3d 806, 809 (7th Cir.1997) (citing Fed. R. Civ.P. 56(c)).

The defendants argue that the district court's grant of summary judgment was inappropriate because the question of whether or not the SBA had knowledge of the minor's trust at the time of the loan arrangement raised a genuine issue of material fact. To support this assertion, the defendants claim that the SBA lawyers were guilty of engaging in attorney misconduct while attempting to hide their actual knowledge of the trust's existence. The Government disproved each of the Torreses' claims of misconduct, causing the defendants to again alter and reinvent their new theories of defense. The law is clear that if the SBA did not have knowledge of the unrecorded trust, the SBA, as mortgagee, acquired good title as against all unrecorded claims. See generally *Burnex Oil Co. v. Floyd*, 106 Ill.App.2d 16, 245 N.E.2d 539 (1969).

Initially, the defendants contended that the SBA submitted a false mortgage document to the court. According to the Torreses, the SBA lawyers substituted several pages of the mortgage, which referred specifically to the existence of the trust, in an attempt to hide their knowledge of the pre-existing trust. As part of this "substitution of pages" theory, the Torreses claimed that the SBA altered the date of the closing and forged the signature of Noel Torres. This allegation was proven false because the mortgage, pursuant to SBA policy, was typed on a single folded sheet of paper, making substitution of separate sheets impossible. Additionally, after Marchini observed Rosee and Noel Torres sign the mortgage, Rosee and Noel signed an affidavit of ownership swearing that they were the owners of the property. Further-

more, a title search for the property was undertaken prior to the disbursement of the funds and revealed that Rosee and Noel Torres were the owners of record. In the alternative, the defendants argued that the SBA had reneged on a promise, supposedly made during the closing by SBA attorneys, to transfer handwritten information referring to the existence of the trust from Rosee's unsigned copy to the SBA's final draft mortgage.

The defendants made a number of other accusations concerning misconduct on the part of the SBA attorneys which the court found to be unreliable and false. Briefly, Rosee Torres alleged that SBA attorney James Dall had represented both parties at the closing, and had represented the trust while in private practice. The defendants also claimed that Jody Adler, another SBA lawyer who had worked on the Torreses' case, participated in the 1984 loan arrangement and had knowledge of the existence of the trust. As proof of this final claim, Rosee Torres submitted to the court an affidavit asserting that "[i]n about 1984, Jody Rachel Adler, an attorney, became legal advisor with SBA and was employed in the Legal Department as colleague and co-counsel with Mr. Dall." The defendants submitted a page of *Sullivan's Law Directory* to the court, which had been incorrectly dated by Rosee Torres, to support their assertion that Adler was working for the SBA at the time the loan was made. The Government established that the defendants misrepresented the date of the submitted page from *Sullivan's Law Directory*, and that Adler did not actually begin to work for the SBA until September of 1985, long after the loan was made. After abandoning the theory that Adler had worked with Noel and Rosee Torres on the loan arrangement, the defendants claimed, in a remarkable coincidence, that Adler had also represented the minor's trust in her private practice beginning in 1983 until she began her employment with the SBA. However, the Torreses presented not one scintilla of evidence in support of this claim.

The Torreses repeatedly changed their theory of defense in order to attempt to establish that the Government had imputed

knowledge of the existence of the trust. The Government was able to establish that each of the Torreses' affidavits lacked support in the record and above all were in conflict with their prior affidavits. Generally, contradictions in sworn statements do not provide factual support to oppose a properly supported motion for summary judgment. *See Darnell v. Target Stores*, 16 F.3d 174, 176 (7th Cir.1994). "Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir.1993). We have previously held that a "party should not be allowed to create issues of credibility by contradicting his own earlier testimony." *Essick v. Yellow Freight Systems, Inc.*, 965 F.2d 334, 335 (7th Cir.1992) (citation and internal quotation omitted). Furthermore, "if we allowed a party to create a genuine issue of material fact by changing his prior testimony: the very purpose of the summary judgment motion—to weed out unfounded claims, specious denials, and sham defenses—would be severely undercut." *Id.* (citation and internal quotation omitted). The defendants repeatedly contradicted their previous assertions in attempting to prove imputed knowledge of the trust on the part of the SBA. However, contradictory supplemental affidavits are permissible to defeat a motion of summary judgment *only if they are "based on newly discovered evidence." Adelman–Tremblay v. Jewel Cos.*, 859 F.2d 517, 520 (7th Cir.1988) (emphasis added). The Torreses failed to convince the court that their ever-changing theory of Government attorney misconduct was based on new evidence that was not available to them at the outset of the litigation. Due to numerous discrepancies in the defendants' affidavits, and the fact that these affidavits were not based on newly discovered evidence, we are of the opinion that the defendants simply lied before the district court in an attempt to avoid the Government foreclosure action. The Torreses attempted to create genuine issues of material fact through the vehicle of shifting defense theories. *See Essick*, 965 F.2d at 335. We agree with the findings of the court and are convinced that the defendants' claims

are unfounded and do not present issues of material fact.

■ The Torreses also assert that the district court erred in finding that several of their other defenses did not raise a genuine issue of material fact. Specifically, the Torreses claimed that they had made payments on their loan totaling $92,054 and that the SBA refused to give them credit for this amount. However, in a bankruptcy action on November 18, 1992, the Torreses previously argued that they had paid only $54,634 on the SBA loan, not $92,054. Moreover, although this issue is important in assisting us in determining how much money the Torreses owe the Government, it does little to further the defendants' foreclosure defense. Accordingly, the defendants have failed to raise a genuine issue of material fact with respect to the existence of the unpaid loan.

■ The Torreses also argue that summary judgment was inappropriate because there was an issue of material fact as to whether Noel Torres's signature was forged on the mortgage. However, Noel Torres's self-serving accusation of forgery was contradicted by two sworn statements: an affidavit from a forensic document expert who analyzed Noel's signature on the mortgage and concluded it was not a forgery; and the affidavit of an SBA employee who witnessed and notarized Noel's signature on the mortgage. Furthermore, the trial judge compared the alleged forged signature with exemplars of Noel's signature and ruled that they were similar. We agree with the court's finding that there was no genuine issue of material fact concerning the authenticity of Noel Torres's signature on the mortgage.

■ Appellants also challenge the district court's November 22, 1995, order striking all allegations in their answer concerning bankruptcy, the statute of frauds, and racial and ethnic discrimination. However, on November 29, 1995, the Torreses explicitly "withdr[ew] the affirmative defense of sex and race discrimination and disparity in loan policy," thus failing to dispute the district judge's order. "[I]ssues not raised in the district court are deemed waived" on appeal, so long as the opposing party argues that a

waiver of that issue occurred. *Momient–El v. DeTella*, 118 F.3d 535, 540 (7th Cir.1997). Because the Torreses withdrew their claims of race and sex discrimination and disparity in loan policy and did not dispute the district court's order, they are barred from disputing the trial judge's ruling on appeal. The Torreses also assert that their mortgage was discharged in their 1992 bankruptcy action, thereby preventing the SBA from presently foreclosing on the mortgage.[7] However, the bankruptcy court granted the SBA's motion to lift an automatic stay over the mortgaged property specifically so that the SBA could file the instant foreclosure action. The district court, on appeal, affirmed the bankruptcy court's order lifting the stay and ruled that the proper time for the Torreses to challenge the foreclosure was in the foreclosure proceeding. The Torreses' claim that the mortgage is discharged is false. The Torreses failed to support their statute of frauds defense with anything other than self-serving affidavits, and non-notarized loan documents which included handwritten comments dated December 19, 1983, prior to the date of the loan closing. Because the Torreses failed to raise any genuine issues of material fact, summary judgment was appropriate.

## C. Civil Contempt and Sanctions

On June 25, 1996, the district court entered an order finding Rosee Torres in civil contempt for submitting the misrepresented page from *Sullivan's Law Directory*. The order required Rosee "to pay the government's fees and costs associated with responding to her motion to vacate or amend as remedial compensation" and required the Government to submit a petition of fees and costs within 14 days. It was not until July 19, 1996, that the district court issued an order in the contempt proceeding requiring Rosee to pay the Government $1,125 in attorney's fees. Prior to the court's determination of fees and costs, the defendants filed their notice of appeal. The defendants failed to refile their appeal after the fees were quantified and the time to do so has long since expired.

We review the district court's finding of civil contempt under an abuse of discretion standard. *See BPS Guard Servs., Inc. v. International Union of United Plant Guard Workers of Am., Local 228*, 45 F.3d 205, 209 (7th Cir.1995) (citations omitted). However, before we can review the finding of contempt, we must determine whether we have jurisdiction. "[I]f there was no final order when [defendants] filed [their] notice of appeal, the notice was premature, and did not confer appellate jurisdiction." *Szabo v. U.S. Marine Corp.*, 819 F.2d 714, 717 (7th Cir.1987) (citing United States v. Hansen, 795 F.2d 35 (7th Cir.1986)).

> To be final, [a] post-judgment order must . . . dispose completely of the issues raised. An order finding a party in civil contempt disposes of all the issues raised only if it includes both a finding of contempt and the imposition of a sanction. Here, the district court's order included only a finding of contempt; the district court expressly reserved the question of compensatory damages for a later date. Thus, the finding of contempt was an interlocutory order and nonappealable under [28 U.S.C.] § 1291.

*Motorola, Inc. v. Computer Displays Int'l, Inc.*, 739 F.2d 1149, 1154 (7th Cir.1984) (citations omitted).

In considering the finality of the court's civil contempt order, we must determine whether the "imposition of a sanction," as discussed in *Motorola*, requires the court's assignment of a specific dollar figure, or whether it refers more generally to the court's announcement, as here, that sanctions will be assigned.

In *Cleveland Hair Clinic, Inc. v. Puig*, after finding that the defendants and their lawyer had engaged in sanctionable misconduct, the trial judge directed the defendants to remit approximately $100,000 in partial payment of an obligation still to be calculated. 106 F.3d 165, 166 (7th Cir.1997). The defendants filed a notice of appeal, which we dismissed for lack of jurisdiction because "the amount of the sanction remains to be

---

7. The Torreses' bankruptcy discharge did not, however, extinguish the lien obtained by the

SBA. *See Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 778, 116 L.Ed.2d 903.

determined, and the award therefore is not a 'final' decision." *Id.* "An adjudication of civil contempt used to enforce a judicial order is not appealable if the underlying order is itself not appealable." *Id.* at 167 (citations omitted).

Although the district judge ordered Rosee Torres to pay "the government's fees and costs," he did not provide the defendants with a specific dollar figure until the Government had computed an appropriate sum. Thus, under *Cleveland Hair Clinic*, the "amount of the sanction remains to be determined," and the award was therefore not a "final" decision. *Id.* at 166. As such, the issue of the propriety of the sanctions is not properly before this Court.

■ Furthermore, even if the civil contempt issue fell within appellate jurisdiction, we hold that the district judge did not abuse his discretion in finding Rosee Torres in civil contempt for submitting to the court a page from the 1985–1986 *Sullivan's Law Directory* which Torres had improperly labeled "1984 Sullivan's Law Directory." Rules 11(b) and 11(c) of the Federal Rules of Civil Procedure provide that if the trial court determines that a representation to the court, including any "pleading, written motion, or other paper," is "presented for any improper purpose ... the court may ... impose an appropriate sanction upon the attorneys, law firms, or parties" that have made the representation. The record demonstrates that Torres submitted the improperly labeled page in an attempt to deceive the court and establish that the SBA lawyers had knowledge of the trust.

## IV. CONCLUSION

The Torreses have attempted to defraud the United States Government through the introduction of fraudulent documents and testimony, claiming that they transferred ownership of their house to a spendthrift trust for their daughter. Because the defendants have failed to raise any genuine issues of material fact to refute the district court's ruling that the SBA had no knowledge of the trust's existence, we hold that the court did not abuse its discretion in granting the Government's motion for summary judgment.

AFFIRMED.