# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-1418

TRANZACT TECHNOLOGIES, INC.,

*Plaintiff-Appellant,*

v.

1SOURCE WORLDSITE and JOHN WANG,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 01 C 8508—**Edward A. Bobrick**, *Magistrate Judge.*

———————

ARGUED JANUARY 14, 2005—DECIDED MAY 4, 2005

———————

Before RIPPLE, MANION, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* The close business relationship between Tranzact Technologies, Inc. ("Tranzact"), and 1Source Worldsite ("1Source") soured when 1Source failed to repay its debts. The two companies became involved in a lawsuit that ended with a stipulation and agreed judgment order. When 1Source's chairman, John Wang, did not comply with the order, Tranzact moved to hold Wang in contempt of court. The district court dismissed the motion as moot, and Tranzact appealed. For the reasons stated herein, we reverse.

## I.  History

Tranzact is an Illinois corporation in the logistics business. Its main service is arranging the shipment of goods to warehouses and customers. Michael Regan, Tranzact's chairman, met with John Wang in January 2000 to discuss the formation of a global sourcing company that would sell products to businesses and consumers with free shipping. The plan was for Tranzact to provide logistics services for the new company, 1Source, which was formed later that year. Wang was chairman and majority shareholder of 1Source, with Regan serving as a director and CEO. Tranzact invested $120,000 in 1Source stock—stock which Tranzact says it never received. In addition, 1Source executed a promissory note for $200,000 in favor of Tranzact and a collateral agreement assigning Tranzact rights in certain computer assets. 1Source ultimately failed to repay the note; this and other conflicts ended the friendly relationship between the two entities.

In November 2001, Tranzact filed a complaint against 1Source and Wang in district court claiming breach of contract and unjust enrichment. The claims against Wang were dropped for lack of personal jurisdiction. After discovery, Tranzact and 1Source consented to having a magistrate judge try the case. The magistrate judge suggested that the parties attempt to come up with a stipulated judgment based on 1Source's representations that it had limited assets to satisfy any judgment. The parties eventually consented to the stipulation and agreed judgment order entered on February 14, 2003. Under this order, Wang was to turn over the collateral securing the $200,000 promissory note free and clear of any liens, claims, or encumbrances.

Almost a year passed before Tranzact was able to take possession of any of the collateral computer equipment. On the day after the order was entered, February 15, 2003, Tranzact agent Thomas Higgins went to 1Source's former

offices to collect the equipment. Wang refused to turn it over, stating that he would not release the collateral unless Tranzact paid the storage fees. Wang reiterated this demand in a phone conversation with Higgins the following week.

When Tranzact's counsel contacted Wang in September 2003 advising him that a third party would be coming to pick up the equipment, Wang stated that he had given everything except for a Sun Server to the storage company to cover the costs of storage. Wang also said that he would not allow the Sun Server to be taken unless Tranzact would give him a release stating that he had complied with his obligations under the stipulation and agreed judgment order.

Tranzact provided no such release, and instead on November 11, 2003, filed a motion for rule to show cause why Wang should not be held in contempt of court (the "contempt motion"). At an initial hearing on November 13, Magistrate Judge Edward Bobrick ordered Wang to turn over the Sun Server and any other remaining collateral. In the time he was given to respond, Wang gave Tranzact the name and address of the company storing the Sun Server.

At the resumed hearing on the contempt motion on December 8, Wang revealed that 1Source in fact had collateral in addition to the Sun Server. The court continued the hearing on the contempt motion to ensure that Tranzact was able to collect the Sun Server, and Tranzact was finally able to do so. On December 19, Wang gave the name and address of the company storing the remaining collateral. Wang still insisted that Tranzact was responsible for storage costs, saying that Higgins did not attempt collection until April 2003.[1] Without ruling on the issue of storage

---

[1] Wang had asserted earlier that Higgins contacted him in May or June 2003; in any case, Wang disputes Tranzact's position

(continued...)

costs, the magistrate judge found that Wang had released the Sun Server and revealed the location of the remaining collateral and dismissed the contempt motion as moot. The magistrate judge also made no ruling with respect to the attorney's fees and costs requested in Tranzact's motion.

Tranzact filed a motion for reconsideration on January 6, 2004, and on January 12 the magistrate judge awarded attorney's fees against 1Source (which had apparently gone out of business) but not against Wang. At the January 21 continued hearing, the magistrate judge began to schedule an evidentiary hearing to resolve the question of fact on storage costs, but then stated that Tranzact had failed to mitigate its damages and declared the matter "over." Tranzact appeals from the December 19 order dismissing the contempt motion and the January 21 judgment.

## II.  Analysis

This court has jurisdiction over Tranzact's appeal under 28 U.S.C. § 1291. Post-judgment proceedings are treated as a separate lawsuit under that statute, and an order winding up those proceedings is appealable if it is final. *See Transp. Cybernetics, Inc. v. Forest Transit Comm'n*, 950 F.2d 350, 352 (7th Cir. 1991); *SEC v. Suter*, 832 F.2d 988, 990 (7th Cir. 1987). Here, the parties agreed to a judgment entered in February 2003, so Tranzact's November contempt motion was certainly a post-judgment proceeding. In denying Tranzact's motion to reconsider dismissal of the contempt motion on January 21, Magistrate Judge Bobrick specifically stated that there was nothing left to be done in the

---

[1]  (...continued)
(supported by Higgins's affidavit) that Higgins attempted collection of the collateral on February 15, 2003, the day after the stipulation and agreed judgment order was entered.

trial court; his order was final, and it disposed of all issues raised in the contempt motion. (Jan. 21 Hr'g Tr. at 21 ("And so I'm concluding this matter and letting the chips fall where they may. . . .[T]here's good reason for me to deny the motion and conclud[e] this matter, period. It's over.").) We need not discuss the finality of the December 19 order, because the appeal from the final January 21 order brings up the earlier order for consideration. *See Suter*, 832 F.2d at 990 (appeal from final order in post-judgment proceedings brings up issues unresolved in main case). Defendants' protestations as to jurisdiction notwithstanding, we proceed to the merits.[2]

We review the magistrate judge's decision to dismiss the contempt motion for abuse of discretion. *See Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 921 (7th Cir. 1996). "For [a party] to be held in civil contempt, he must have violated an order that sets forth in specific detail an unequivocal command from the court." *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001). Civil contempt sanctions are properly imposed for two reasons: to compel compliance with the court order and to compensate the complainant for losses caused by contemptuous actions. *Id.* Also, attorney's fees may be awarded in contempt proceedings at the court's discretion. *CFTC v. Premex, Inc.*, 655 F.2d 779, 785 (7th Cir. 1981).

The provision that Wang is accused of violating is as follows:

---

[2] The cases cited by Wang and 1Source in support of their argument that this court lacks jurisdiction under 28 U.S.C. § 1291 differ from this situation because those cases had issues still pending in the trial courts. *See SEC v. Van Waeyenberghe*, 284 F.3d 812, 815 (7th Cir. 2002) (finding a turnover order not final because it determined only who held the money while litigation proceeded); *United States v. Torres*, 142 F.3d 962, 970 (7th Cir. 1998) (finding a contempt order not final because the amount of fees awarded was yet to be determined by the trial court).

> Plaintiff is entitled to possession of the Collateral and John Wang, as agent for the Defendant, shall deliver, or cause to be delivered, all of the Collateral, free and clear of any liens, claims or encumbrances, to the Plaintiff on or before February 12, 2003, or such other date as the Parties expressly agree to in writing.

(R. at 39.) Wang himself does not dispute that he did not deliver (or cause to be delivered) the collateral to Tranzact. He argues instead that this provision is not enforceable through a contempt proceeding because it is nothing more than a contract provision, albeit incorporated in a court order. It is true that a settlement agreement may not be enforceable through a contempt proceeding when its terms are not expressly set forth in a court order, *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 461 (7th Cir. 1993), but this is not such a case. The language at issue here is not simply incorporated by reference into the court's order, but specifically set forth in the order itself. It is clear, unambiguous, and perfectly amenable to being enforced through a contempt proceeding.

As noted, Wang did not deliver the collateral. After several attempts to pick up the equipment through its own agent, Tranzact filed its contempt motion. The motion sought compensation for the fair value of the collateral disposed of by Wang (including the equipment given to the storage company to pay storage fees), attorney's fees incurred in prosecuting the motion, a decision on who was responsible for still-outstanding storage costs, and an order compelling Wang to *turn over* any remaining collateral. Only after the filing of this contempt motion did Wang reveal the locations of the various pieces of computer equipment making up the collateral—still not complying literally with his obligations under the order. Based on this plain failure to fulfill his court-ordered obligations—to which he had agreed rather than going to trial—it would have been proper to hold Wang in contempt.

Instead, Magistrate Judge Bobrick dismissed the contempt motion as moot and did not rule on Tranzact's other requests for relief, including the issue of storage costs and compensation for the collateral disposed of by Wang. This failure to resolve disputed questions of fact was an abuse of discretion. Due process requires a district court to resolve relevant factual disputes—allowing discovery and holding an evidentiary hearing if necessary—in a civil contempt proceeding. *D. Patrick*, 8 F.3d at 459; *In re Grand Jury Proceedings Empanelled May 1988*, 894 F.2d 881, 882-83 (7th Cir. 1989). The due process rights belong to both the alleged contemnor and the complainant; as we stated in *Rockwell Graphic Systems*,

> [t]here is no reason to suppose that this due process protection accrues only to the benefit of those alleged to be in contempt. A party who seeks enforcement of an injunction through the medium of civil contempt is likewise entitled to the resolution of genuine issues of material fact that bear upon the allegations by which it seeks to support a finding of contempt.

91 F.3d at 920; *see also United States v. City of Northlake*, 942 F.2d 1164, 1170 (7th Cir. 1991) (reversing denial of contempt motion and holding that complainant was entitled to discovery as to whether defendant was in contempt). Here, the court was obliged to rule on which party had responsibility for storage costs and to resolve the issue of the collateral disposed of by Wang.

The magistrate judge based his dismissal on Tranzact's purported failure to mitigate its damages, saying that "[i]f [Tranzact] wanted the equipment, [it] could have paid the storage fees right then and there. . . . They would have been a lot less than they are now, and we wouldn't have this controversy." (Jan. 21 Hr'g Tr. at 21.) Because Tranzact did not have a duty to mitigate, we find this basis for dismissal to be erroneous as a matter of law. According to the agreed

judgment order, Wang was obligated to deliver the collateral free and clear of any liens, claims, or encumbrances. Requiring Tranzact to pay storage fees on Higgins's first attempt to collect the collateral (which Higgins has sworn was on February 15, the day after the order was entered, but Wang in unsworn statements says was at some later point in time) or forfeit a contempt motion would be to reward Wang's failure to comply with the plain language of the order.

Finally, we turn to the issue of attorney's fees. As mentioned above, it is within the trial court's discretion to award fees upon a finding of civil contempt. *Premex*, 655 F.2d at 785. There is some indication in the record that the magistrate judge did not believe he could assess Wang personally with attorney fees. (Jan. 12 Hr'g Tr. at 9.) This is not the case; it is well established that an individual officially responsible for a corporation's compliance with a court order, as Wang was in this case, may be punished for contempt if he fails to act appropriately. *See Connolly v. J.T. Ventures*, 851 F.2d 930, 935 (7th Cir. 1988). On remand, if Wang is found in contempt, the magistrate should award attorney's fees and costs against Wang as he sees fit.

### III. Conclusion

Civil contempt sanctions are designed for the dual purposes of compelling compliance with a court order and compensating the complainant for losses caused by contemptuous actions. There is evidence in the record that Wang did not comply with the clear and unambiguous terms of a court order; civil contempt is a proper means of compelling compliance with that order and compensating Tranzact for any noncompliance. The magistrate abused his discretion in dismissing Tranzact's contempt motion without ruling on disputed issues of fact and on the erroneous grounds that Tranzact had breached a duty to mitigate its

damages. We REVERSE the dismissal and REMAND the case to the district court. The district court on remand is directed to resolve these issues and award costs and attorney's fees as appropriate.

A true Copy:

Teste:

_____
***Clerk of the United States Court of Appeals for the Seventh Circuit***