In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 07-2681

PEARLE VISION, INC., a Delaware corporation, AND
PEARLE, INC., a Delaware corporation,

*Plaintiffs-Appellees*,

*v.*

VICTOR ROMM, individually and d/b/a ROMM & CO., INC.,
ROMM VISION ENTERPRISES, INC., et al.,

*Defendants-Appellants.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 4349—**Joan Humphrey Lefkow**, *Judge.*

_____

ARGUED JANUARY 23, 2008—DECIDED SEPTEMBER 3, 2008

_____

Before MANION, ROVNER, and EVANS, *Circuit Judges.*

MANION, *Circuit Judge.* Pearle Vision, Inc. ("Pearle Vision") filed suit against Victor Romm and three of his companies alleging violations of their franchise agreements. The district court entered a preliminary injunction directing Romm to make certain items, including patient

files, available to Pearle Vision. The district court eventually found that Romm was not complying with the injunction, and entered a $1,000 per day contempt sanction to remain in effect until the items at issue were provided to Pearle Vision. After finding that Romm never complied with its order, the district court entered judgment on the contempt in the amount of $321,000. Romm appeals arguing that he was not given an opportunity to purge the contempt, that the amount of the judgment was excessive, and that the district court failed to exercise the leniency normally afforded pro se litigants. We affirm.

## I.

Romm is an optometrist who, until 2004, operated four Pearle Vision stores pursuant to franchise agreements he had entered into with Pearle Vision. On June 29, 2004, Pearle Vision filed suit alleging that Romm had materially defaulted under those agreements.[1] Romm's alleged infractions included incorrectly charging customers or charging them for services or products not received, poor record keeping, and abandoning at least one store for three or more days. Pearle Vision sought damages for Romm's violation of the franchise agreements, as well as a permanent injunction prohibiting Romm from further operating the stores and granting possession of them to Pearle Vision.

---

[1] In addition to suing Romm individually, Pearle Vision filed suit against Romm doing business as Romm & Co., Inc., Romm Vision Enterprises, Inc., and Eyes 2000, Ltd. For ease of discussion, we refer to the defendants collectively as "Romm."

On August 13, 2004, Pearle Vision filed a motion for a preliminary injunction asking the court to enjoin Romm from further possessing or operating the stores, using either the "Pearle" or "Pearle Vision" marks, or competing with Pearle Vision within three miles of the stores in question. The parties appeared for a hearing on September 27, 2004.[2] They informed the court that they had come to an agreement where Romm would cease operation and give up possession of the stores, and cease using Pearle Vision's marks. Two days later, however, Pearle Vision filed an emergency motion for a preliminary injunction in which it alleged that Romm was observed after 9:00 p.m. on September 28, 2004, removing boxes from one of the stores and loading them onto a rental truck. Pearle Vision asserted that this violated portions of the franchise agreement requiring Romm to cooperate in an orderly change of management when the agreements were terminated, as well as giving Pearle Vision the right to purchase equipment present in the stores. Pearle Vision also argued that Romm was obligated under their agreement to give it copies of all his patient records. Romm responded that he had moved the items in question to a storage unit, and that he was entitled to do so because Pearle Vision failed to exercise its purchase right upon initiating termination procedures in June 2004. On September 30, 2004, the court entered an emergency preliminary injunction directing Romm to make all of the store's equipment available to Pearle

---

[2] Romm was represented by counsel during all proceedings except as noted below.

Vision, and further stating "that Pearle Vision shall have the right to inspect and remove all patient charts and records, including all records relating to optometric or opthomologic services from the operations on the premises, and inspect any hard drive which may contain any such information."

On October 5, 2004, Pearle Vision filed the first of three petitions for a rule to show cause alleging that Romm had failed to comply with the September 30 injunction. Pearle Vision alleged, among other things, that Romm had failed to make available to Pearle Vision's representative all of his patient records. These allegations were later verified by Franchise Manager Michael Maziarek who testified at a hearing that the only patient records he found at Romm's storage unit were three Tupperware trays containing records no more current than 1999. When Maziarek asked Romm about the remaining records, Romm stated that anything not in the unit was at the stores. Maziarek visited the stores the following day, but again did not find any records more current than 1999. He did find file drawers labeled "2003" and "2004," but they were empty. At the hearing on Pearle Vision's petition, the court told Romm that it appeared he had violated the court's order and that he was going to be sanctioned, but that the sanction would be reduced if he complied by making the delivery to Pearle Vision in a timely fashion. The district court issued an order on October 6, 2004, directing Romm to show cause why he should not be held in contempt of court, and further directing him to deliver to Pearle Vision, by 2:00 p.m. that day at a Pearle Vision store in South Elgin, the equip-

ment and records as set forth in its September 30 injunction.

Despite this clear direction, Romm failed to show up on October 6, prompting Pearle Vision to file its second petition the following day. The court issued another order, this time directing Romm to make delivery of the relevant items to Pearle Vision by 1:00 p.m. of that day, and again directing Romm to show cause why he should not be held in contempt of court. Romm was not present at the hearing on the second petition, but the district court judge informed his counsel, who was present, that there was "undoubtedly" going to be a sanction imposed on Romm for his conduct and that she was "shocked and appalled" by Romm's behavior.

On October 12, 2004, Pearle Vision filed its third petition for a rule to show cause. Pearle Vision alleged that Romm arrived as directed on October 7, but still failed to comply fully with the court's injunction. First, Pearle Vision claimed that Romm had failed to return the total amount of equipment that would have been present in fully equipped stores, and provided an itemized list of what it believed to be missing. More importantly, Pearle Vision alleged that Romm had failed to produce all of the patient records. It admitted that Romm delivered boxes of patient records which were later determined to cover the years following 1999. Romm also delivered three personal computers, but they contained no patient data. This was not unusual because Pearle Vision stated that the normal set-up in its stores was to have personal computer input terminals which relayed patient data to

a central server that stored the information. However, Romm did not produce a server. Thus, there was no way to verify that all the physical records had been turned over. Pearle Vision claimed to be further aggrieved because computer utilization of the patient files facilitates easier searches of their contents and status.

A hearing on the third petition was held on October 14, 2004. While the hearing was not completed that day, the court believed it had sufficient information before it to establish Romm's non-compliance with its injunction order. Therefore, on that same day, the court entered an order sanctioning Romm at the rate of $1,000 per day until such time as he complied with the court's September 30 injunction order by producing the equipment and patient records in question. The court further stated that the sanction was subject to its ultimate findings after completing the hearing.

The court resumed the hearing on October 22, 2004, and heard testimony from Romm, Maziarek, and a computer analyst named Gary Wadhani, who had analyzed the computers received from Romm to determine their contents. Wadhani confirmed the allegations Pearle Vision made earlier that there was no patient data contained on the machines. Wadhani also testified that upon starting the computers, they attempted to connect to a server, and that they were therefore likely only work stations meant to connect to the machine that actually contained data. Romm testified that he did not want to be in contempt of court, and that he had returned everything he had to Pearle Vision. Moments later, however,

he testified that he had maintained patient information, such as addresses, appointment dates, and prescription information, on computers in his stores.

The court found that Wadhani's testimony, as well as Romm's admission that he kept patient data on computers, cast doubt on Romm's assertion that he had complied with the court's order to deliver all patient records to Pearle Vision.[3] After noting its hope that the sanction amount would not turn into an actual judgment, the court expressed its belief that Romm was not in compliance with the injunction order. It stated that Romm had been given an opportunity to explain what happened to the data patient files and had failed to do so and that the $1,000 per day sanction would remain in place until Romm could establish compliance with the court's order.

On September 12, 2005, the district court entered summary judgment on the merits of the case in favor of Pearle Vision in the amount of $325,521.99. The court also directed Romm to show cause why $321,000 in sanctions should not be added to the judgment. This was the amount to which the $1,000 per day sanction had accumulated between October 14, 2004, and September 1, 2005, the date

---

[3] At the hearing, the parties still disputed whether Romm had turned over all the equipment required by the injunction. However, because Romm admitted that patient files were maintained on computers, and these computer files were nowhere to be found, the court based its decision to leave the sanction in place on the patient records.

Pearle Vision's motion for summary judgment was granted. This amount was not set in stone, however, as Romm was afforded the opportunity to file his individual and corporate tax returns for the years 2002 through 2004 "[i]n order to ascertain the correct amount of the judgment to be entered on this sanction." Additionally, the district court stated that if Romm provided Pearle Vision with all of the patient records at issue within fourteen days, the order imposing the $1,000 per day sanction would be vacated.

Romm filed an affidavit on September 27, 2005, stating that he wished to avail himself of the second option put to him by the court regarding the patient records. He then proceeded to make the same arguments he had made in October 2004—that he had complied with the court's order by turning over all of the physical records, and that he was not in possession of any electronic files stored on computers or otherwise. At a hearing on October 6, 2005, the court said it would not revisit its earlier factual finding that Romm was not in compliance because he had failed to produce electronic patient files. The court then spelled out for Romm that since he was admitting an inability to produce the missing computer files, his only remaining option was to file his tax returns, and he was given another week within which to make that filing. Romm decided on another option and filed for bankruptcy on October 10, 2005. As a result, on October 13, 2005, the district court dismissed the action without prejudice and with leave to reinstate.

Following proceedings in the bankruptcy court, Pearle Vision filed a motion to reinstate proceedings and for an

entry of judgment on the contempt orders on April 11, 2007. Pearle Vision informed the court that while the damages portion of the judgment had been discharged by the bankruptcy court, that court believed the district court was in a better position to determine whether Romm's contumacious conduct was willful and malicious, and therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(6).[4] The parties appeared before the court for a hearing on Pearle Vision's motion on April 19, 2007. For the first time in the course of the protracted proceedings, Romm appeared before the court pro se.[5] The district court asked Pearle Vision if there was an amount below $321,000 that it would accept in satisfaction of the contempt amount, and Pearle Vision indicated that there likely was if the court found that Romm's conduct had been willful and malicious, and therefore nondischargeable. The district court stated its reluctance to saddle Romm with the type of liability that would "ruin his life," and encouraged the parties to attempt to settle the matter. The court also set the next hearing for May 31, 2007. On May 1, 2007, the district court entered an

[4] "A discharge under . . . this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."

[5] The record shows that Romm was represented by two different attorneys during the district court proceedings, and Pearle Vision represented in its motion to reinstate that Romm also retained two different attorneys during the bankruptcy proceedings.

order directing Romm to produce to Pearle Vision's attorney his personal and any corporate tax returns for the years 2004 through 2006, as well as other documents that would inform Pearle Vision of his financial standing. Romm was directed to make these filings on or before May 21, 2007.

The district court was informed that Romm attempted to file certain documents with the clerk's office on May 21, 2007, in response to the court's May 1 order. The documents included a copy of the court's order, a handwritten note stating that Romm had no bank accounts, interest in real property, or interest in any business, a completed in forma pauperis application, and an unsigned copy of Romm's 2005 tax returns. The clerk's office did not accept these documents because they contained no case caption. Romm filed no documents with Pearle Vision's counsel as he had been directed to do. Romm also failed to appear at the May 31, 2007, hearing. The court offered a final opportunity to Romm in an order entered the same day. Romm was directed to withdraw the documents from the clerk's office, serve them on defense counsel, complete compliance with the court's May 1 order, and to appear for a hearing on June 12, 2007. Romm did none of these things, and took no further action below.

On June 14, 2007, the district court entered its final memorandum opinion, providing a thorough recounting of the proceedings, and stating that it found no basis upon which it could discharge its earlier orders to show cause. The court restated its finding that Romm had failed to turn over all of the patient files as it had directed

him to do despite admitting that patient files were kept in electronic form on computers in his stores. The court concluded that Romm had willfully failed to turn over the files and had willfully disregarded the court's order, and entered judgment against him and in favor of Pearle Vision in the full sanction amount of $321,000. Romm appeals.

## II.

On appeal, Romm argues that he was not provided a full opportunity to purge the contempt by the means set forth in the court's September 12, 2005, order, that the district court's sanction award was excessive and unrelated to Pearle Vision's damages, and that he was not provided the leniency due a pro se litigator. For Romm to be held in civil contempt, "he must have violated an order that sets forth in specific detail an unequivocal command from the court." *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001). The court's power to enforce its order by civil contempt "rests in its inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *Id.* Such sanctions "are properly imposed for two reasons: to compel compliance with the court order and to compensate the complainant for losses caused by contemptuous actions." *Tranzact Techs., Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005). We will not reverse the district court's imposition of civil contempt sanctions unless the court abused its discretion. *Dowell*, 257 F.3d at 699.

Romm's first argument regards the district court's September 12, 2005, order in which it directed Romm to either produce the patient records at issue or file his tax returns for determination of a correct judgment amount. Romm argues that the district court disregarded his efforts to comply with this order and purge his contempt. In support, he relies on his September 27, 2005, affidavit, in which he stated that he

> did not take [the] computers or [the electronic] records. All of the computers from the three stores were either left in the stores or removed to a storage shed. Pearle Vision was given full access to the three (3) stores and the storage shed where those computers were located. The electronic patient records were stored to whatever extent, within those computers for Pearle Vision's review.

Romm argues that this statement is "critical" because it contradicts the testimony received by the court in October 2004. We do not see the significance of this argument. Romm, in essence, attempted to reargue findings made by the court almost a year before he filed his affidavit, namely that he was not being forthright about his possession of patient computer files, and that he had violated the court's order by not making these files available to Pearle Vision. The contents of Romm's affidavit were not as novel as he now argues because it was his position at least since the October 22, 2004, hearing that he was no longer in possession of any computer containing patient files. The court found against Romm then, and he provided no reason for the court to revisit that finding. Notably, Romm did

not move for reconsideration of the court's earlier finding, and it is doubtful such a motion would have been granted. *See Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (noting that the "limited function" of motions for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence") (quotation omitted).

Furthermore, the court's finding was not based solely on Romm's admission that the computer files existed, and therefore could not be undercut merely by Romm's affidavit. In October 2004, the court expressly relied on Maziarek's testimony that patient information was normally stored on computers in the Pearle Vision stores he managed, and Wadhani's testimony that the computers recovered from Romm were searching for a server with which to connect. We do not believe the district court abused its discretion in making this finding in October 2004, nor in declining to revisit it when presented with Romm's affidavit. *See In re Grand Jury Proceedings of December, 1989 (Freligh)*, 903 F.2d 1167, 1170 (7th Cir. 1990) (noting that the district court's findings in contempt proceedings are only disturbed when they are an abuse of discretion or clearly erroneous).

That being the case, we believe that if anything prevented Romm from purging his contempt under the September 12, 2005, order, it was his own insistence on continuing to argue that he had no files to produce, and disregarding the other option made available to him by the court. The district court's order presented him with two options—produce the files or submit his tax returns.

Romm chose the former, but then stated he had no files to produce. He failed to make any attempt to submit his financial information prior to filing bankruptcy, and the attempt he made after the case was reinstated was woefully inadequate.

On this point, we turn briefly to Romm's argument that the district court failed to afford him the leniency normally given to pro se litigants. That courts are required to give liberal construction to pro se pleadings is well established. *Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006). However, it is also well established that pro se litigants are not excused from compliance with procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (noting that the Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

Romm's repeated procedural violations, and not a lack of lenience by the district court, were the reason that a judgment for the full sanction amount was ultimately entered against him. As the record demonstrates, much of Romm's contumacious behavior occurred while he was represented by counsel. *See* nn. 2 and 5, *supra*. Once the case was reinstated following bankruptcy proceedings, Romm seems to have finally realized that rearguing the computer files issue was not an option. However, his attempt to produce his financial documents in response to the court's May 1, 2007, order was inadequate even by pro se litigant standards. Romm's production was incomplete, and he attempted to file the papers at the clerk's

office instead of serving them on Pearle Vision's counsel as directed.[6] The court did not leave Romm to his own devices at this point, however. Instead, it issued an order informing him that the documents would not be accepted as filed, the reason for their rejection, and what he should do next, namely, make a full production of the responsive documents to Pearle Vision's counsel. Leading a pro se litigant through the steps he should follow by piecemeal instructions can hardly be described as a lack of leniency.

Furthermore, if Romm had any doubt about what he should do, it could likely have been cleared up when he appeared before the court. Unfortunately, Romm did not appear at any hearings following the one held on April 19, 2007, even thought the May 31, 2007, hearing was sched-uled in Romm's presence at the April 19 hearing. The record establishes that the district court treated Romm fairly and repeatedly stated its desire that he not receive a judgment against him for the full sanction of $1,000 per day. A small level of cooperation from Romm, and cer-tainly a level attainable by a pro se litigant, would have resulted in a different outcome for him. However, Romm's

---

[6] Even if Romm had been directed to file the papers at the clerk's office, his inability or unwillingness to satisfy the basic filing requirement of including a case caption is notable, especially in light of how many pro se litigants fulfill this basic requirement daily in courts across the country. Moreover, Romm did not face some of the hurdles many pro se litigants do, such as imprisonment. He is an optometrist who was free to engage in the litigation to the best of his abilities.

failure to cooperate led to the entry of judgment in the amount of $321,000. That judgment did not result from the district court's lack of deference for his pro se status.

Finally, regarding the judgment amount, Romm argues that it is excessive and not related to Pearle Vision's damages. Our review of the record indicates that Romm did not raise this argument before the district court. Romm argued repeatedly that he should not have to pay the sanction because he was not in possession of any computer patient files. He never argued that the $1,000 per day fine was unequal to Pearle Vision's actual loss, unrelated to the magnitude of his contempt, or out of proportion to his financial resources, which are our concerns when reviewing a contempt amount. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1946). Accordingly, this argument is waived. *See Metzger v. Ill. State Police*, 519 F.3d 677, 681-82 (7th Cir. 2008).

## III.

There was no basis for the district court to revisit its earlier factual finding regarding Romm's possession of the computer patient files and his failure to turn them over. Romm was therefore not denied an opportunity to purge his contempt as set forth in the district court's September 12, 2005, order. Additionally, the district court exhibited sufficient deference to Romm's pro se status when the case was reinstated following the bankruptcy proceedings. Finally, because Romm did not argue below that the contempt amount was excessive, he waived the argument

and may not raise it here for the first time. Accordingly, the judgment of the district court is AFFIRMED.