NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 24, 2014[*]
Decided July 28, 2014

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 14-1315

| | |
|---|---|
| GLENN T. TURNER, | Appeal from the |
| *Plaintiff-Appellant,* | United States District Court for |
| | Western District of Wisconsin. |
| *v.* | |
| | No. 12-cv-502-bbc |
| BURTON COX, JR. | |
| and JOLINDA WATERMAN, | Barbara B. Crabb, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

Glenn Turner, a prisoner at the Wisconsin Secure Program facility in Boscobel, appeals the grant of summary judgment against him in the suit asserting deliberate indifference by a prison doctor and nurse who he says refused to treat his h. pylori infection between 2005 and 2007. *See* 42 U.S.C. § 1983. We affirm.

In 2012 Turner sued a prison doctor, Burton Cox, and a prison nurse, Jolinda Waterman, for refusing several years earlier to test and treat him for an h. pylori infection (a collection of bacteria that causes stomach inflamation and excess stomach acid, *see* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 762, 829 (32d ed. 2012)). According to his complaint, Turner in early 2005 was suffering from abdominal pain, acid reflux, and nausea, and fellow inmates advised him to be tested for h. pylori because his symptoms resembled those experienced by other inmates who had been infected by the bacterium. Turner saw Dr. Cox in January 2005 and requested the test, but neither Cox nor nurse Waterman tested him until March 2007. One "emergency" occurred in 2006 when he complained during recreation of feeling dizzy, sweaty, and nauseous and subsequently vomited, but was ignored by the health-services unit and particularly nurse Waterman, who did not go to see him until the next day, after he had filed a health-services request detailing the incident.

The district court screened the complaint and allowed Turner to proceed with his Eighth Amendment claims against Cox and Waterman. The court provided Turner with a copy of its local rules, including instructions on how to respond to a motion for summary judgment.

In March 2013 Turner filed the first of three motions to appoint an expert witness, requesting a "digestive specialist" versed in h. pylori who could explain the infection and collect statistical evidence about the outbreak of bacteria at the prison between 2004 and 2007. The court was not persuaded that a digestive specialist would help resolve Turner's claims and denied the request. *See* FED. R. EVID. 614, 706.

A month later Turner filed the first of three requests for recruited counsel. Counsel was necessary, he said, because he needed help to find an expert to support his failure-to-treat claim and to sift through the two years of complicated medical records. He filed his second request for counsel eight days later, reiterating his need for help in obtaining expert testimony to show the inadequacy of his treatment. About a month later, Turner filed his third request for counsel, stating that he was in 24-hour cell confinement so could not adequately research his case.

Turner next filed his second request for an appointed expert witness—a gastroenterologist—who, he believed, could help evaluate the adequacy of his treatment and medical diagnoses.

In July the district court denied all three of Turner's requests for counsel and his second request for an expert witness. Recruited counsel was unnecessary, the court explained, because Turner had filed well-written submissions and demonstrated his ability to follow instructions. The court construed Turner's request for an appointed expert as one to assist him present his claim rather than help the court evaluate conflicting evidence, so it denied the request.

The defendants then filed a motion for summary judgment, arguing that they were not deliberately indifferent to Turner's medical needs. Turner's symptoms, they maintained, were not consistent with an h. pylori infection before 2007 and did not constitute serious medical needs, and in any event, a disagreement with the defendants' treatment decisions could not constitute a deliberate-indifference claim. In addition, defendants argued, Waterman denied knowing about the 2006 emergency call because she was doing labs at that time and so could not be responsible for failing to respond (and in any event, Turner's dissipating nausea and vomiting were not serious medical needs).

In support of their motion, defendants produced Turner's healthcare records and declarations from Dr. Cox and nurse Waterman detailing the treatment decisions they made regarding Turner's care. According to Dr. Cox, Turner's medical records showed that between 1992 and 2005, he had been seen by the health-services unit 16 times for chest pain and that he received antacids for heartburn on 4 of these occasions. Cox recalled that he first examined Turner in January 2005 for complaints of chest pain and diagnosed him with costochondritis (inflamation of the chest wall), but declined to test Turner for h. pylori because it was inconsistent with his symptoms. Nurse Waterman recounted that Turner's next visit to the health-services unit was in April 2005, when he reported "stomach problems," diarrhea, and frequent urination, and asked about h. pylori symptoms (which Turner denies); Waterman performed a urinalysis test that came back negative. Turner returned to the health center later that month with complaints of  nausea, dizziness, frequent urination, and "stooling"; medical staff found him to be hypoglycemic, monitored him, and told him to increase his fluid intake. Dr. Cox saw Turner in June 2005 for complaints of nausea, dizziness, and "stomach flu or food poison[ing]," and Cox advised Turner after the urinalysis came back clear to increase his water intake and decrease his activity level in hot weather.

Turner did not report another illness until September 2006, when he requested emergency help during recreation for dizziness, sweating, nausea, and vomiting, which he reported to the on-duty sergeant. The sergeant called the health-services unit, but no one from the unit responded. Turner filed a health-services request the next day detailing the incident. Nurse Waterman recalled that she promptly responded in writing to Turner's request and explained that she was on the unit doing lab work at the time of the call and that the unit had been given the name of a different inmate who was experiencing health problems at recreation. Waterman examined Turner that day, gave him a pink bismuth tablet for his upset stomach, and consulted with Dr. Cox, who prescribed rantitidine, a drug used to reduce acid reflux. Dr. Cox renewed Turner's rantitidine prescription in December 2006 after Turner twice reported epigastric distress at the health-services unit (for which nurses gave him antacids).

In March 2007 Dr. Cox diagnosed Turner with an h. pylori infection after he complained of epigastric distress and laboratory tests for h. pylori came back positive. Cox prescribed him a set of three antibiotics to clear the infection.

Turner responded to the defendants' summary-judgment motion but his response did not identify any contrary facts, as required by the court's local rules, and instead characterized the defendants' facts as "conclusory, argumentative, and unsupported by admissible evidence." He also filed his third request for an appointed expert, explaining that he could not find an expert willing to testify and that he needed a gastroenterologist to discuss the symptoms of h. pylori and explain how Dr. Cox and nurse Waterman should have known to screen him for h. pylori between 2005 and 2007 even if his symptoms were atypical of an h. pylori infection.

The court denied Turner's third request for an appointed expert explaining that an expert would not substantially aid it in adjudicating the matter, let alone support his claim that the defendants' treatment decisions were outside the bounds of accepted professional judgment.

The court ultimately granted summary judgment to the defendants, concluding that Turner failed to show their deliberate indifference to his medical needs by failing to diagnose his condition earlier. (In reaching this conclusion, the court explained that it treated many of the defendants' proposed facts as undisputed because Turner failed to comply with local rules concerning submission of evidence and proposed findings of fact.) Between January 2005 and March 2007, the court explained, the defendants were involved in treating only two of Turner's four complaints in which he specifically

reported acid reflux or vomiting (in six other instances Turner had complained of more generalized symptoms such as nausea or diarrhea or merely "stomach problems"—symptoms that would not necessarily be associated with h. pylori). Further, once Turner's complaints about epigastric distress became more consistent (after September 2006) and the prescribed mediation proved ineffective, Cox promptly screened Turner for h. pylori. As for nurse Waterman, the court concluded that she could not be liable for failing to respond to the "emergency" request Turner made in September 2006 because there was no evidence that she knew Turner was sick. The court added that Turner's complaints at the time (nausea and an isolated instance of vomiting) were not serious medical needs that required immediate treatment.

On appeal Turner first argues that the district court held him to a standard that was too stringent for a pro se litigant when it ignored his argument at summary judgment that his serious symptoms warranted an h. pylori test before 2007. But a court has discretion to enforce its local rules, even against a pro se litigant. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). Here, the court acted within its discretion when it concluded that his filings failed to comply with local rules and as a consequence essentially accepted the defendants' proposed facts as true.

Turner next argues that the evidence showed that his symptoms before March 2007 were consistent with h. pylori, so the court should not have determined on summary judgment that the defendants did not need to test and treat him for h. pylori at that time. But the district court properly concluded that Turner failed to show that his pre-2007 symptoms should have alerted the defendants of the necessity for an h. pylori test. As the district court stated, Cox and Waterman assessed Turner's condition after considering his symptoms. Given the absence of evidence that Turner's symptoms before 2007 were consistent with h. pylori, the defendants' responses to Turner's complaints were not so far afield of professional standards as to establish lack of professional judgment. *See Arnett v. Webster*, 658 F.3d 742, 758–59 (7th Cir. 2011); *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006).

Next, Turner contends that the district court erred in granting summary judgment to Waterman because his nausea and vomiting in September 2006 constituted a serious medical need to which Waterman should have responded. But Turner fails to refute the district court's actual ruling—that Waterman was  unaware that Turner was sick in September 2006 and so could not be held responsible for failing to treat him. Waterman can only be liable for what she personally knew and did, and cannot be

liable for the knowledge or actions of her colleagues in the health-services unit. *See Burks v. Raemisch*, 555 F.3d 592, 593–94 (7th Cir. 2009).

Turner next argues that the district court abused its discretion by failing to appoint an expert witness to evaluate the extent of the defendants' recklessness in failing to interpret his symptoms as h. pylori. A court may appoint an expert to help sort through conflicting evidence, *see* FED. R. EVID. 706(a); *Ledford v. Sullivan*, 105 F.3d 354, 358 (7th Cir. 1997), but it need not appoint an expert for a party's own benefit or to explain symptoms that can be understood by a layperson, *see ATA Airlines, Inc. v. Federal Express Corp.*, 665 F.3d 882, 889 (7th Cir. 2011); *Gil v. Reed*, 381 F.3d 649, 659 (7th Cir. 2004); *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008). Because Turner's submissions failed to contradict the defendants' diagnostic evidence about the symptoms and diagnosis of h. pylori infections, an appointed expert would not have added to the understanding of the case, and the court did not abuse its discretion by declining to appoint an expert. *See Ledford*, 105 F.3d at 359–60.

Finally, Turner argues that the district court abused its discretion by denying his request for recruited counsel because, he says, counsel would have helped him obtain necessary testimony from a gastroenterologist. A court may recruit counsel to assist a plaintiff in obtaining medical-expert testimony, *see Henderson v. Ghosh*, No. 13-2035, 2014 WL 2757473, at *6 (7th Cir. June 18, 2014); *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012), but it does not abuse its discretion by declining to recruit counsel for a litigant like Turner who had filed well-written submissions and appeared competent to litigate his case, *see Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014). Furthermore, Turner cannot show how he was prejudiced by the court's denial of his motion to recruit counsel. *See Navejar v. Iyiola*, 718 F.3d 692, 697 (7th Cir. 2013). The recruitment of counsel would not have changed the case's outcome because no facts demonstrated that Cox and Waterman provided treatment outside the bounds of reasoned professional judgment or were otherwise deliberately indifferent to Turner's condition. *See Jackson v. Kotter*, 541 F.3d 688, 700–01 (7th Cir. 2008).

Accordingly, the district court's judgment is AFFIRMED.