**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 26, 2016[*]
Decided August 30, 2016

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 16-1552

| | |
|---|---|
| BRENDA LEONARD, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of |
| | Illinois, Eastern Division. |
| *v.* | |
| | No. 14 C 10478 |
| JULIAN CASTRO, | |
| Secretary of United States Department of | John Z. Lee, |
| Housing and Urban Development, | *Judge*. |
| *Defendant-Appellee*. | |

**O R D E R**

This case presents Brenda Leonard's second challenge to the decision of her former employer, the United States Department of Housing and Urban Development, to fire her. She accuses HUD of discriminating against her on the basis of race, age, and prior protected activity when, between 2007 and 2010, it reprimanded her, gave her negative performance reviews, and eventually fired her in 2010. The district court

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

entered summary judgment against her on the ground that Leonard cannot relitigate in this case the same claims she already litigated in an earlier case. We agree with that analysis and affirm the district court's judgment.

Leonard worked as a project manager at HUD reviewing financial statements submitted by contractors for payment. After five years in that position, Leonard received an "opportunity to improve notice." The notice gave her 120 days to rectify her performance deficiencies, which included mathematical errors, poor customer service, and delays in processing funding requests. But by May 2010, after the time to correct her problems had passed, Leonard's supervisor told her that she was still underperforming. HUD fired Leonard that December.

Leonard pursued two paths of redress. First, she appealed HUD's decision to fire her to the Merit Systems Protection Board. She alleged that HUD fired her because of her race (African American), age (62 years old at the time she was fired), and her prior grievances with the EEOC. The Board found that her uncorrected work deficiencies justified her discharge. After receiving no relief on administrative appeal, Leonard turned to federal court. She sued the then-current Secretary of HUD to challenge the decision to fire her, arguing that the negative reviews reflected discrimination. After granting Leonard several extensions of discovery, the district court entered summary judgment against her. *See Leonard v. Donovan*, No. 12 C 9055 (N.D. Ill. March 4, 2015). It reasoned that Leonard produced no evidence that she had met her employer's legitimate job expectations. Leonard did not appeal that decision, though she admits that she received from the district court's help desk "the Right to Appeal rules."

Leonard also pursued a second path of redress, which progressed on a slower track. While she was still working at HUD, Leonard had filed three grievances with the EEOC. Each grievance complained that her supervisors' criticisms and remarks were discriminatory and harassing. The grievances were based on the same evidence that Leonard presented to the Board in her first path of redress, challenging her discharge. Waiting until after the Board decided the discharge case, the EEOC ruled that the Board had resolved that the criticisms and remarks were not discriminatory. Though dissatisfied with that ruling, she did not ask the judge in the discharge case, which was now in federal court, to allow her to add claims that her supervisors' comments were unlawful. Instead, Leonard filed a second federal case, the one now before us against the current Secretary of HUD. In this suit, she contends that her supervisors harassed her, unfairly criticized her and, as in the first suit, fired her for discriminatory reasons. The district court concluded that claim preclusion bars this suit.

On appeal Leonard properly does not dispute that elements of claim preclusion are met. The preclusive effect of a prior federal suit "prevents the relitigation of claims already litigated as well as those that could have been litigated but were not" where three elements are met: "(1) an identity of parties; (2) a final judgment on the merits; and (3) an identity of the cause of action (as determined by comparing the suits' operative facts)." *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011) (internal citations omitted). An officer, such as the Secretary of HUD, sued in his official capacity is identical to his successor for purposes of claim preclusion. *See City of New Orleans v. Citizens' Bank of La.*, 167 U.S. 371, 388 (1897); *Gray v. Lacke*, 885 F.2d 399, 405 (7th Cir. 1989) (explaining that persons sued in official capacity are in privity with government entities and other employees). Both suits allege that HUD discriminated against her, and they both rely on the same core facts: Leonard's performance reviews, her supervisors' comments, and her discharge. Lastly, the entry of judgment in the first case was a final one on the merits. *See Czarniecki v. City of Chicago*, 633 F.3d 545, 549 (7th Cir. 2011).

Instead, Leonard argues that this court should excuse her duplicative litigation for two reasons, but both are baseless. First, she says that she did not know that she could appeal the district court's adverse decision in her first case. But Leonard cites no authority for her contention that ignorance of the right to appeal negates claim preclusion. Her contention, if correct, would mean that decisions are not conclusive unless courts advise civil litigants about their right to appeal. But the Supreme Court has declined to impose on courts a duty to counsel civil litigants. *See Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 162 (2000) ("[T]he trial judge is under no duty to provide personal instruction on courtroom procedure."); *Arnett v. Webster*, 658 F.3d 742, 756 (7th Cir. 2011) ("fomenting litigation" not part of judicial function); *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (even pro se litigants must comply with procedural rules). In any event, on appeal Leonard acknowledges that she received from the help desk information about appealing, so she was not ignorant of her rights.

Leonard's second argument is that she did not have a full and fair opportunity to litigate the first suit because she was not armed with the discovery that she now has. She points to performance appraisals of a black male colleague that she says were not produced in the first case, as well as a description of her job. But new evidence does not relieve a litigant of the preclusive effect of a previous federal judgment. *Hudson v. Hedge*, 27 F.3d 274, 276 (7th Cir. 1994). Although Leonard did not obtain these documents in her first case, she had a full and fair opportunity to do so during the

nearly two years in which she conducted discovery, extended several times at her request. *See DeGuelle v. Camilli*, 724 F.3d 933, 936 (7th Cir. 2013); *United States v. Sandoz Pharm. Corp.*, 894 F.2d 825, 828 (6th Cir. 1990). If dissatisfied with the extent of discovery in the first case, Leonard may not use *this* appeal to attack collaterally the discovery rulings in the first case. *See Fed. Election Comm'n v. Al Salvi for Senate Comm.*, 205 F.3d 1015, 1020 (7th Cir. 2000); *Hudson*, 27 F.3d at 276. Finally, we do not see how either document would have changed the outcome. The evidence does not undermine the district court's conclusion in the first case that she failed to meet her legitimate job expectations.

One final note. We recognize that when Leonard filed her first suit, the EEOC had not finished processing her grievances about the events that preceded her discharge. Although she does not argue the point, we have considered whether Leonard, needing to wait until the EEOC finished its work, may for that reason overcome claim preclusion and relitigate claims about events occurring before her discharge. The answer is no. When the EEOC finished its work, the first case (about the discharge) was still pending. Leonard could have asked the judge in that case to add any claims for relief about those pre-discharge events, which as we have said also formed the basis for her discharge claims. Because she did not, claim preclusion still applies. *See Palka,* 662 F.3d at 438; *Czarniecki,* 633 F.3d at 550–51 (7th Cir. 2011); *Brzostowski v. Laidlaw Waste Sys. Inc.*, 49 F.3d 337, 339 (7th Cir. 1995).

AFFIRMED.