ALBERT NIEMERG, Indiv. and On Behalf of the Working-Interest Owners of the Logue Heirs Well, *et al.*, Plaintiffs-Appellees, v. GREGG W. BONELLI *et al.*, Defendants (Gary Billingsley *et al.*, Defendants-Appellants).

Fifth District   No. 5—02—0034

Opinion filed October 29, 2003.

Randall A. Wolter, of Wolter, Beeman & Lynch, of Springfield, for appellants.

Brent D. Holmes, of Heller, Holmes & Associates, P.C., of Mattoon, and James B. Wham, of Wham & Wham, of Centralia, for appellees.

JUSTICE WELCH delivered the opinion of the court:

This appeal arises out of a cause of action filed in the circuit court of Fayette County by Albert Niemerg, in his own right and on behalf of the working-interest owners of the Logue Heirs Well (the Well), and Niemerg Gas Company (the plaintiffs) against Gregg W. Bonelli, Gary Billingsley, Questar Petroleum, Inc., Thomas Falese, and Falese Oil Company (the defendants). Shortly after a settlement agreement had been reached among all the parties and a consent judgment had been entered against all the defendants by the circuit court of Fayette

County, Gary Billingsley and Questar Petroleum, Inc. (Questar), filed a motion pursuant to section 2—1401 of the Illinois Code of Civil Procedure (735 ILCS 5/2—1401 (West 2000)). The motion sought to vacate the consent judgment, based on allegations of newly discovered evidence and the trial court's mistake of law. Billingsley and Questar also filed a motion for substitution of judge and a motion to stay all the enforcement proceedings on the consent judgment. All these motions were denied by the circuit court of Fayette County by an order entered August 15, 2001. Billingsley and Questar, of which Billingsley is president, appeal. The other defendants are not parties to this appeal.

The facts underlying this case are quite complicated and convoluted. We set forth those facts herein as simplistically as possible and only to the extent necessary for our disposition of the issues raised on this appeal. We recognize the risk of an oversimplification and the omission of facts from this disposition but assure the reader that we have carefully considered all the facts contained in the record on appeal. We also point out that, because this case was not tried but was settled by a consent judgment, many of the factual disputes have not been resolved.

The plaintiffs filed their amended complaint against the defendants on January 26, 2000. The complaint centers on a dispute over the ownership of a subsidiary gas pipeline used to carry natural gas from the Well to the pipeline of Natural Gas Pipeline Company of America, the main transporter of the gas from the Well. The complaint alleges that, pursuant to an agreement with the plaintiffs, Bonelli became the operator of the Well on April 21, 1997. Bonelli represented to the plaintiffs that he had acquired the subsidiary gas pipeline at a cost to himself of $161,002.17. The operating agreement between the plaintiffs and Bonelli provided that when Bonelli recouped these costs out of the production from the Well, he would transfer the ownership of the pipeline to the plaintiffs.

For a fee, Bonelli allowed Billingsley and Questar to use the pipeline to transport gas from neighboring wells that Billingsley and Questar owned and operated. Bonelli, an attorney, subsequently entered into an attorney/client relationship with Billingsley and Questar.

The complaint alleges that the Well produced sufficient revenue from the sale of gas to reimburse Bonelli for his costs in acquiring the pipeline. The plaintiffs repeatedly requested Bonelli to transfer the ownership of the pipeline to the plaintiffs but Bonelli refused. Accordingly, legal and equitable title to the pipeline passed to the plaintiffs by operation of law pursuant to the operating agreement entered into between the plaintiffs and Bonelli.

The complaint further alleges that Bonelli eventually resigned as the operator of the Well and that the plaintiffs replaced him with a new operator. Upon learning that the Well was being operated and gas therefrom was being sold by the new operator, Billingsley went to the well site and turned a valve on the gas pipeline, shutting off the flow of the gas from the Well. Apparently, Billingsley and Questar asserted their ownership of the gas pipeline and sought their appointment as the operator of the Well. Bonelli, Billingsley, and Questar then engaged in a scheme to interfere with the plaintiffs' ownership of the gas pipeline and to prevent the appointment of an operator of the Well. As a result, the plaintiffs have been unable to produce and sell any gas from the Well.

The complaint sought an injunction prohibiting the defendants from interfering in the operation of the Well, a declaratory judgment that the plaintiffs are the lawful owners of the gas pipeline, thereby quieting title to the property, an accounting, and compensatory and punitive damages.

The issues were joined and the case was set for a trial. Just before the trial, on August 10, 2001, the trial court granted the plaintiffs' motion *in limine* to estop Billingsley and Questar from asserting that they owned the pipeline, because in a deposition in a previous lawsuit, Billingsley had denied his ownership of the pipeline. On August 13, 2001, the trial court granted a partial summary judgment in favor of the plaintiffs and against the defendants on certain issues. The defendants were enjoined from interfering with the operation of the Well, and the title to the property was quieted in the plaintiffs. A judgment was entered in favor of the plaintiffs and against the defendants on the issue of liability regarding the allegations of interference with property rights. The case was set to proceed to a trial on the issues of compensatory and punitive damages for interference with property rights and on other remaining issues.

On the second day of the trial, August 15, 2001, the parties reached a settlement agreement, and a consent judgment order was entered. A judgment was entered in favor of the plaintiffs and against the defendants on the claim of interference with property rights. The judgment is quite detailed and requires numerous undertakings on the part of the defendants on behalf of the plaintiffs. Among other things, the defendants were ordered to pay to the plaintiffs the sum of $550,000, with $50,000 being due on or before September 15, 2001, and the remainder to be paid by December 1, 2001, with interest at the rate of 9%. The defendants further agreed to provide a blanket lien on, and collateral assignment of, all their assets, in order to secure the money judgment, and to refrain from transferring any property

without the plaintiffs' consent. The plaintiffs agreed to refrain from executing on the judgment so long as the defendants remained in compliance therewith. The judgment order also provides, "Judge William J. Becker shall continue to exercise jurisdiction over this case and all matters pertaining to this case and in enforcing the terms of this judgment."

After the entry of this consent judgment, Bonelli hired an accountant to do an accounting of the proceeds of the Well to determine whether the $161,002.17 threshold set forth in the operating agreement requiring a transfer of ownership of the pipeline from Bonelli to the plaintiffs had been met. This accountant determined that it had not been met. The results of this accounting were provided to all the parties, including Billingsley and Questar.

On December 4, 2001, Billingsley and Questar (the appellants) filed a motion pursuant to section 2—1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2—1401 (West 2000)), seeking to vacate the consent judgment of August 15, 2001. The appellants claimed that because the Well had not produced sufficient revenue to reimburse Bonelli for his expenses in the amount of $161,002.17, the ownership of the pipeline had never passed to the plaintiffs, Bonelli had at all times owned the pipeline, and the appellants therefore could not be guilty of interfering with the plaintiffs' property rights in the pipeline. The appellants argued that the accounting constitutes newly discovered evidence sufficient to justify vacating the judgment and reopening the case pursuant to section 2—1401 of the Code. They also argued that even if the plaintiffs' allegations of liability are true, there is no evidence of any damages suffered by the plaintiffs and that any finding to the contrary is against the manifest weight of the evidence. They further claimed that vacating the judgment and reopening the case would prevent an unjust result in that the evidence does not support a finding of liability against the appellants. The appellants asserted that they settled only under undue pressure. They argued that vacating the consent judgment and setting the matter for a trial would result in no prejudice to the plaintiffs but would ensure a just result.

On the same date, the appellants filed a motion for substitution of judge as a matter of right pursuant to section 2—1001(a)(2) of the Code (735 ILCS 5/2—1001(a)(2) (West 2000)). They argued that a section 2—1401 petition is a new action and that they are entitled to a substitution of judge as a matter of right.

The appellants also filed a motion to stay further proceedings in the cause pending a ruling on the section 2—1401 petition to vacate. Because the plaintiffs believed that the defendants were in default of the consent judgment, they had started enforcement proceedings thereon.

These motions were heard and decided on December 14, 2001. The trial court denied the appellants' motion for substitution of judge, on the ground that they had waived any such right by virtue of the provision of the consent judgment which provides that Judge Becker shall retain jurisdiction over all matters pertaining to the case. The trial court also denied the appellants' section 2—1401 motion and their motion to stay.

■ The appellants' first argument on appeal is that the trial court erred in denying their motion for substitution of judge, which had been filed pursuant to section 2—1001(a)(2) of the Code. That section provides that a party is entitled to a substitution of judge as of right when the application is made before the trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case. 735 ILCS 5/2—1001(a)(2) (West 2000). A trial court has no discretion to deny a proper motion for substitution of judge as of right. *Rodisch v. Commacho-Esparza*, 309 Ill. App. 3d 346, 350 (1999). The issue of whether there had been a ruling on a substantial issue in the case is a question of law to which the appellate court applies a *de novo* standard of review. *Rodisch*, 309 Ill. App. 3d at 350. The policy behind the rule requiring a motion for substitution to be presented before the judge has ruled on any substantial issue in the case is to preclude litigants from "judge-shopping" after having formed an opinion that the judge may be unfavorably disposed toward the litigant's cause. *In re Daniel R.*, 291 Ill. App. 3d 1003, 1014 (1997).

The question presented in the instant appeal is whether, by virtue of having heard and decided the underlying case that the appellants sought to reopen, Judge Becker can be deemed to have ruled on a substantial issue in the section 2—1401 proceeding. The answer to this question hinges on whether, for purposes of a section 2—1001(a)(2) motion for substitution of judge, the section 2—1401 petition is a continuation of the underlying cause or a new proceeding to which the right of substitution applies.

■ The appellants correctly argue that although a section 2—1401 petition must be filed in the same proceeding in which the judgment sought to be vacated was entered, it is not a continuation thereof but is a new proceeding subject to the usual rules of civil procedure. 735 ILCS 5/2—1401(b) (West 2000); *Klein v. LaSalle National Bank*, 155 Ill. 2d 201, 204 (1993). As explained in *Childers v. Kruse*, 297 Ill. App. 3d 70, 77 (1998), although a section 2—1401 petition arises out of the same proceeding in which the judgment to which it is directed was entered, it is a collateral attack on the judgment. The appellants conclude that since a section 2—1401 motion to vacate is a new action to which the usual rules of civil procedure apply and since section

2—1001(a)(2) allows a substitution of judge as a matter of right in a new action in which the trial judge has not yet ruled on any substantial issue, it follows that a party filing a section 2—1401 motion to vacate must be granted a substitution of judge upon request, provided that the trial judge has not ruled upon any substantial issue *in the section 2—1401 proceeding*.

■ While the appellants' argument appears logical, it is clear to us that to allow a substitution of judge in a section 2—1401 proceeding would defeat the policy behind the rule requiring a motion for substitution to be presented before the judge has ruled on any substantial issue in the case: to preclude litigants from "judge-shopping" after having formed an opinion that the judge may be unfavorably disposed toward the litigant's cause. See *In re Daniel R.*, 291 Ill. App. 3d 1003, 1014 (1997). Furthermore, it is equally clear to us that, in the interest of judicial economy, it is practical that the same judge who heard the underlying case should hear the section 2—1401 petition. Therefore, we reject the appellants' argument that they were entitled to a substitution of judge as a matter of right in their section 2—1401 proceeding. Although a section 2—1401 proceeding may be a "new action" for some purposes, such as pleading sufficiency and service of process, it is not a new case for purposes of section 2—1001(a)(2).

We find *In re Marriage of Kozloff*, 101 Ill. 2d 526 (1984), instructive on this issue. In that case, a divorce proceeding, the husband filed a postdecree petition to modify the maintenance provisions of the decree. When the petition was assigned to a judge who had previously ruled against the husband in the divorce proceeding, the husband filed a motion for substitution of judge. The motion was denied and the husband appealed. The appellate court ruled that each postdecree petition constituted a new proceeding and that the husband was therefore entitled to a substitution of judge so long as the judge had not ruled on a substantial issue in that postdecree proceeding. *In re Marriage of Kozloff*, 113 Ill. App. 3d 1161, 457 N.E.2d 168 (1983) (unpublished order under Supreme Court Rule 23 (87 Ill. 2d R. 23)). The Illinois Supreme Court reversed, stating:

> "We cannot accept the appellate court position, because in our judgment it would lead to a serious abuse of the venue act. This court has long condemned a litigant's attempt to seek a change of venue after he has formed an opinion, based upon the court's adverse rulings, that the judge may be unfavorably disposed towards his cause. [Citations.] Under the appellate court rule, however, a change of venue can be sought on any post[ ]decree petition if the litigant is dissatisfied with the judge's prior rulings on other, related petitions despite the fact that all of the petitions

emanate from the same dissolution proceedings. *** Taken to its logical extreme, a resourceful litigant could repeat the process until he found a judge he considered sympathetic to his cause. Obviously, such maneuvering is anathematical to the efficient use of judicial resources." *In re Marriage of Kozloff*, 101 Ill. 2d at 530-31.

■ The reasoning of *In re Marriage of Kozloff* is just as compelling in the case at bar. Like postdecree divorce proceedings, a section 2—1401 proceeding will always involve the same parties as the underlying case and will always relate back to the original judgment in the underlying case. See *In re Daniel R.*, 291 Ill. App. 3d 1003, 1016 (1997) (distinguishing proceedings under the Juvenile Court Act of 1987 (705 ILCS 405/1—1 *et seq.* (West 1994))). It is filed in the same case in which the judgment was entered, and the pleading bears the same docket number. We conclude that a section 2—1401 petition is not a new cause of action for purposes of section 2—1001(a)(2). The trial court did not err in denying the appellants' motion for substitution of judge.

The appellants' remaining arguments are considered and rejected in an unpublished portion of this decision.

For the foregoing reasons, the judgment of the circuit court of Fayette County is hereby affirmed, and the plaintiffs' motion for sanctions is denied.

Judgment affirmed; motion for sanctions denied.

DONOVAN and CHAPMAN, JJ., concur.