2020 IL App (1st) 191718-U

THIRD DIVISION
June 30, 2020

No. 1-19-1718

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A. | ) | Appeal from |
| | ) | the Circuit Court |
| Respondent-Appellee, | ) | of Cook County |
| | ) | |
| v. | ) | 2016-CH-05738 |
| | ) | |
| ROSEE TORRES and NOEL TORRES, | ) | Honorable |
| | ) | William B. Sullivan, |
| Petitioners-Appellants. | ) | Judge Presiding |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Ellis and Justice Howse concurred in the judgment.

O R D E R

¶ 1    *Held*: Trial court did not err in denying petition for relief from judgment where petition was factually deficient; appellee's motion for sanctions for filing frivolous motion in appellate court granted, and appellants' crossmotion for sanctions denied.

¶ 2    Rosee and Noel Torres appeal *pro se* from a circuit court order denying their section 2-1401 petition for relief from a final circuit court order confirming the judicial sale of real property in an underlying foreclosure case that had been initiated by Wells Fargo Bank, N.A (Wells Fargo). 735 ILCS 5/2-1401 (West 2016). Wells Fargo contended in the trial court, as it contends here, that *res judicata* barred consideration of the section 2-1401 petition, because the petitioners presented the same arguments in their fourth appeal from the underlying foreclosure. For the sake of

readability, we will be referring to Rosee and Noel Torres together as the singular Rosee Torres. Also pending before this court are cross-motions for sanctions. Wells Fargo's motion concerns Torres's motion to reconsider our order granting Wells Fargo's unopposed motion for additional time to file its appellate response brief. Wells Fargo seeks sanctions on grounds that the motion to reconsider, like virtually all of Torres's other filings, have been meritless, dilatory, and inflammatory. Torres's response/cross-motion asks us to sanction Wells Fargo for its conduct during the four years of litigation, which Torres characterizes as racial and ethnic discrimination, and "exploitation, threats, blackmail and extortion" in an ongoing attempt to "steal" the property.

¶ 3    The record indicates the following. Wells Fargo filed suit in April 2016, alleging that three years earlier, defendant Rosee Torres had defaulted on a $206,000 mortgage loan she obtained in 2007 that was secured by property on West Beach Avenue in Chicago. The property was improved with a single-family home in which Rosee was residing with her husband, Noel. Wells Fargo named Noel as a defendant in order to terminate any homestead rights he had in the real estate. Wells Fargo attached loan documents bearing Rosee's signature as the borrower and Noel's signature as the "non-borrowing spouse" who had joined the security instrument "for the sole purpose of *** waiving any current or potential interest in the Property." The promissory note attached to the complaint showed that the original lender had been World Savings Bank and that the lender's rights had been transferred to one bank and then to another bank. (Wells Fargo indicates that the lender's rights were transferred due to a series of bank acquisitions.) More specifically, World Savings Bank had stamped the final page of Torres's promissory note with the statement: "Pay to the order of[,] without recourse[,] Wachovia Mortgage, FSB, F[ormerly] K[nown] A[s] World Savings Bank, FSB." The adjacent stamp stated: "Without recourse[,] pay

to the order of Wells Fargo Bank, N.A. successor by merger to Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB. The two stamps included the signatures of bank personnel.

¶ 4    In May 2016, Torres answered the foreclosure complaint with denials and affirmative defenses and filed a counter-complaint against Wells Fargo and its mortgage foreclosure counsel, Manley Deas Kochalski.

¶ 5    In the answer and affirmative defenses, Torres alleged "[t]here is no mortgage." Torres contended Wells Fargo (1) relied on a mortgage and note that were "bogus, fictitious, fabricated and forged," (2) "target[ed] Afro-Americans, Hispanics, the elderly and women to fabricate a foreclosure," (3) refused to produce "copies of all original signed or initialed, dated, documents (including mortgage note) defendant(s) claimed to have signed," and (4) engaged in debt collection efforts that were "harassment."

¶ 6    In the counter-complaint, Torres again alleged that there was "no mortgage or loan with Wells Fargo and [Torres did] not owe them any money." Torres contended that the bank and the attorneys brought false claims of foreclosure that were based on "identity theft" from the two predecessor banks and identity theft from Torres in the form of "opening a fake account for Torres in San Antonio, Texas where monies were sent, converted and/or embezzled, even though Torres was never at any closing." The counterclaim also indicated funds had been "diverted back to bank agents and employees," "[while] Torres received nothing." In addition, there was no debt because "World Savings settled the mortgage dispute with Torres on November 15, 2004, years before Wells Fargo acquired World Savings, and at which time Torres executed a Release." (We point out that Torres alleged that she released "the mortgage dispute" in 2004 and that the mortgage loan at issue was executed in 2007.) In addition to identity theft, forgery, conversion, embezzlement,

and theft, the counterclaim indicated Wells Fargo (1) committed blackmail and extortion, (2) violated federal and Illinois laws regarding interstate commerce, false advertising, civil rights, and consumer fraud and deceptive practices; (3) caused Rosee "mental anguish" and other injuries, such as the loss of her employment and an IRA fund; (4) "threatened *** arson if Torres did not surrender the property;" and (5) "threatened *** immigration and deportation if Torres did not cooperate and relinquish the property." Based on these allegations, Torres sought millions of dollars in damages and the deed to the real property.

¶ 7    Wells Fargo filed a motion to dismiss the counter-complaint on grounds that it duplicated a claim Torres filed three years earlier in federal court, *Torres v. Wells Fargo Home Mortgage*, No. 13-cv-05542 (N.D. Ill.) (the "2013 Federal Action"). Wells Fargo argued that because Torres had voluntarily dismissed the 2013 Federal Action with prejudice, *res judicata* barred relitigating those issues in State court in the pending counter-complaint. Wells Fargo argued in the alternative that the counter-complaint was conclusory.

¶ 8    In response, Torres again contended that there was "no loan or mortgage now and [Torres] NEVER had either with WELLS FARGO or its Predecessor/mergers, WORLD & WACHOVIA, and all such documentation(s) are fabricated, forgeries." In a supplemental response, Torres reiterated many previous arguments, such as that the loan documents were forgeries and subject to a "2004 release." In support, Torres attached correspondence that World Savings had written in 2007 stating that a release Torres signed "relieves World and its successors of any obligation or liability as to World Savings prior thereto, including [Torres's attempted purchase of additional properties on Beach Avenue], which were never finalized," and that a settlement check had been issued "as the above matters are closed and you were notified that you *** did not qualify for a

new mortgage due to your 2006 income."

¶ 9     In reply, Wells Fargo argued that *res judicata* prevented relitigation of issues raised in the 2013 Federal Action and that the counter-complaint was factually deficient.

¶ 10    The circuit court granted Wells Fargo's motion to dismiss the counter-complaint, with prejudice.

¶ 11    Torres then filed an appeal, which was assigned case number 1-16-3424, and asked the circuit court to stay the foreclosure action pending the appeal. The circuit court, however, denied the stay; the appellate court dismissed the appeal on March 2, 2017, as a premature appeal due to a lack of Rule 304(a) language (Ill. Sup. Ct. R. 304(a) (eff. Feb. 26, 2010) (regarding appeals from final judgments that do not dispose of the entire proceeding)); and the supreme court denied Torres's petition for leave to appeal and subsequent motion for reconsideration. This appeal was the first of Torres's five appeals.

¶ 12    During this time frame, as the foreclosure action continued, the circuit court denied Torres's amended motion to dismiss Wells Fargo's complaint. In that amended motion, Torres had reiterated many of the arguments that had already been rejected on the basis of *res judicata*, such as that the foreclosure was based on forged documents and that Wells Fargo violated numerous common laws, federal acts, and Illinois statutes regarding race, ethnicity, and consumer rights. The circuit court entered the order with prejudice. Torres appealed the order. This second appeal was docketed as case number 1-17-0521, however, it was dismissed for lack of jurisdiction by the appellate court on June 7, 2017.

¶ 13    Wells Fargo next filed a motion for summary judgment and a motion for judgment of foreclosure and sale. In the summary judgment motion, Wells Fargo pointed out that Torres's

answer did not create a material question of fact because Torres did not dispute that the mortgage was superior to Torres's interest in the property, and Torres offered mere denials rather than proof of timely payments. Wells Fargo tendered an affidavit from bank personnel indicating that Wells Fargo had obtained the promissory note at issue through a bank merger and indorsement and also provided business records showing that Torres stopped making payments on the note and owed a balance of $305,629. Wells Fargo also filed "Merger Documents" consisting of correspondence and records it obtained from the United States Department of Treasury showing that World Savings had changed its name to Wachovia and that Wachovia had subsequently merged with and into Wells Fargo.

¶ 14    Torres filed a combined response to Wells Fargo's motions for summary judgment and foreclosure. Torres once again repeated many of the prior arguments, including: that Torres "NEVER had a mortgage with Wells Fargo;" that "[n]o mortgage exists," because "Torres and World Savings settled by Release *** [in] 2004," but the promissory note was nonetheless "paid for in full;" that *res judicata* barred Wells Fargo's foreclosure action because Torres had voluntarily dismissed her 2013 Federal Action; that Wells Fargo "lacks standing to file the fabricated foreclosure [because it is] not the holder of any original note, [and] is a mortgage servicer;" that the foreclosure is "based on fraud, forgery(ies), fabricated note(s);" that Wells Fargo violated various state and federal statutes; and that Torres was targeted for foreclosure by Wells Fargo because of race and ethnicity.

¶ 15    Torres also filed a 43-page "Motion for Declaratory Judgment And/Or To Transfer Case To Federal Court For Jury Trial, Dismiss Wells Fargo's Fabricated, Fraudulent Foreclosure Complaint, Vacate Dismissal of Counter-Complaint & Grant Leave to Amend." Torres made the

same arguments that had been raised in numerous previous filings, such as that Wells Fargo fabricated the mortgage and note; that there was no mortgage due to the alleged 2004 release; and that Torres was targeted for foreclosure due to race and ethnicity.

¶ 16    Wells Fargo replied in support of its motion for summary judgment that Torres had failed to provide a counter-affidavit refuting the bank's allegations and that all of Torres's renewed arguments (*e.g.*, forgery, release, targeting on the basis of race and ethnicity, etc.) were barred by *res judicata* due to the 2013 Federal Action.

¶ 17    Torres filed a supplemental response repeating the same arguments of forgery, release, targeting, etc.

¶ 18    After a hearing on February 26, 2018, the circuit court entered summary judgment and a judgment of foreclosure and sale in favor of Wells Fargo, found that Torres owed $309,719, and denied Torres's "Motion for Declaratory Judgment."

¶ 19    The next day, February 27, 2018, Torres appealed those orders. Torres's third appeal was docketed as case 1-18-0438, but dismissed by the appellate court for want of jurisdiction on April 5, 2018.

¶ 20    Nearly a year after the judgment of foreclosure, a judicial sale of the property to the highest bidder was conducted on January 4, 2019. On January 7, 2019, the highest bidder, MR Capital Group LLC (MR Capital), filed a motion to intervene in the proceedings and for the court to approve the report of sale and distribution.

¶ 21    On January 15, 2019, Torres filed a motion to deny MR Capital's motion and to "transfer to federal court." In this motion, Torres once again reiterated the previously-raised arguments, including that "Wells Fargo *** fraudulently fabricated the mortgage and foreclosure to obtain a

summary judgment by ID theft, forgery [and the creation of fake accounts in Torres's name(s)]; and the "Property is PAID IN FULL." Continuing in this vein, Torres added that the recent judicial sale was a "sham and fraud." Torres also contended the case should be transferred to the U.S. District Court for the Northern District of Illinois and consolidated there with case number 1:19-cv-112, a new federal case in which Torres was suing MR Capital and Wells Fargo over the foreclosure (the "2019 Federal Action").

¶ 22    On February 7, 2019, MR Capital withdrew its motion, Wells Fargo filed its own motion to confirm the judicial sale, the court denied Torres's motion to transfer the matter to federal court, and the court continued the case to February 19, 2019, for presentation of Wells Fargo's motion. On February 19, 2019, the circuit court granted Wells Fargo's motion and issued an order confirming the sale and giving Torres 30 days to vacate the property.

¶ 23    The next day, Torres filed a fourth appeal, which was assigned case number 1-19-0338.

¶ 24    While the fourth appeal was pending, Torres retained legal counsel and filed documents in the circuit court. The first document, filed on April 8, 2019, asked the circuit court to "Vacate the 2.19.19 Order of Possession issued by this Court for lack of jurisdiction due in part to a bad deed." The second document, filed on April 9, 2019, asked the circuit court to vacate all of its orders and enter judgment in Torres's favor on grounds that there were "releases for both the 2004 and 2007 alleged loans."

¶ 25    On April 19, 2019, Torres filed a motion *pro se* in the appellate court to withdraw the fourth appeal. The husband and wife informed the appellate court that they had retained an attorney who filed documents on their behalf in the circuit court and that they "obtained new evidence" they discovered after the order confirming sale had been entered on February 19, 2019. On May 2,

2019, the appellate court construed the motion as a motion to stay, stayed the appeal until August 1, 2019, thus giving Torres time to resolve the post-judgment documents the lawyer had filed in trial court, and ordered Torres to file a status report on or before July 29, 2019.

¶ 26    In the trial court, Wells Fargo filed a motion to dismiss Torres's April filings, arguing in part that the only avenue to attack a final judgment after 30 days in the trial court was through a section 2-1401 petition, Torres's two April filings did not attempt to meet the necessary elements of that type of petition, and Torres was impermissibly attempting to relitigate the foreclosure action. Torres did not respond to Wells Fargo's motion and instead filed a motion for substitution of judge, for cause. When the matter was called for hearing on July 22, 2019, Torres's attorney stated that he did not respond to the motion to dismiss because "[r]esponses are optional" and that he had filed the motion for substitution of judge "for prophylactic reasons," "without intend[ing] to carry it through." Counsel denied that he knowingly filed a frivolous motion, but acknowledged that he had not given notice of the presentment of the motion for substitution. The court declined to hear a motion which had not been noticed, considered the arguments regarding Wells Fargo's motion, and granted the motion to dismiss Torres's section 2-1401 petition, with prejudice.

¶ 27    Torres returned to the appellate court on July 29, 2019 where the fourth appeal was pending and filed a *pro se* motion to extend the stay of appeal that was to expire on August 1, 2019, on grounds that there was a motion pending in the circuit court. The next day, Wells Fargo filed a written response, factually indicating that there was nothing pending in the trial court. On August 1, 2019, the appellate court denied Torres's motion to extend the stay and reinstated the appeal.

¶ 28    That same day, August 1, 2019, Torres sought the appellate court's reconsideration and to reinstate the stay of the fourth appeal. Torres provided an affidavit reiterating the same arguments

that had been offered numerous times in the trial court, including that "neither Rosee Torres nor Noel Torres have ever applied for or have a Loan or mortgage with Wells Fargo;" that despite the contention of never having had a loan or mortgage, the mortgage is "PAID IN FULL, NO MORTGAGE;" that the judicial sale was "rigged;" that Wells Fargo told Torres that the bank "own[s] the courts in Cook County, particularly Chancery AND the judge handling the foreclosure at issue;" and that Wells Fargo made threats of arson, arrest, and deportation, as "land ownership is for Americans." On August 7, 2019, the appellate court denied Torres's motion for reconsideration of an additional stay of the appeal.

¶ 29     On August 13, 2019, Torres motioned to dismiss the fourth appeal "without prejudice," because "[t]he Appeal Records at this time is [*(sic)*] wholly inadequate, in total disarray and in total disorder;" and "this case is pending in the Circuit Court of Cook County." In response, Wells Fargo argued that the appellate court should treat Torres's renewed motion to dismiss the fourth appeal as a motion to dismiss, instead of *sua sponte* treating it as a motion to stay; and Wells Fargo reiterated that there was nothing pending in the circuit court.

¶ 30     This court granted Torres's motion to dismiss and dismissed the fourth appeal on August 19, 2019. The mandate issued on October 19, 2019.

¶ 31     On August 20, 2019, Torres appealed for the fifth time, seeking review of only the circuit court's July 22, 2019 dismissal of the section 2-1401 petition. This is the current appeal. In the appellate brief, Torres seeks relief that goes far beyond the trial court's granting of Wells Fargo's motion to dismiss Torres's section 2-1401 petition. Torres requests:

> "Relief from Chancery denial of Section 2-1401 Motion on July 22, 2019, fraudulent
>
> summary judgment and rigged sale of property based on fraud, ID theft, forgeries, altering

blank World Savings form to create 15-17 fake, unauthorized loans/mortgages, discrimination (race, Afro-American; ethnicity-Hispanic; gender, female; age-elderly and disabled), incorrect/non-titleholder named; harassment and intimidate on (arson, eviction, arrest, deportation); damages."

¶ 32　Despite presenting an opening brief that contains 44-pages of argument, Torres mentions the section 2-1401 proceeding only briefly before returning to arguments that were previously raised in the underlying foreclosure case. With respect to the section 2-1401 petition, appellant Torres argues that at the hearing on July 22, 2019, the circuit court accepted Wells Fargo's "oral testimony *** over written evidence and uncontested affidavits, and despite the fact that Wells Fargo could not produce any recorded contract, lien assignment, endorsement or allonge from its predecessors *** and there are none in the Records."

¶ 33　Wells Fargo responds that the only order on appeal is the order denying the section 2-1401 petition, and that Torres is barred from directly challenging the underlying foreclosure.

¶ 34　Torres replies that Wells Fargo has made many false and incorrect statements to this appellate court. Torres contends that even though this is an appeal from the dismissal of Torres's section 2-1401 petition, this court can reverse the underlying judgment of foreclosure.

¶ 35　We agree with Wells Fargo that the scope of our review must be limited to the section 2-1401 proceeding that was the basis for Torres's current appeal and that we do not have authority to disturb the trial court orders that were entered in the prior action, the foreclosure action. We reach this conclusion because Torres voluntarily dismissed the fourth appeal, which was a timely appeal from a final and appealable judgment of the trial court. The foreclosure judgment had been entered on February 26, 2018, the judicial sale of the property occurred on January 4, 2019, and

the sale was approved on February 19, 2019. A judgment ordering the foreclosure of a mortgage is final and appealable once the court enters orders approving the sale and directing the distribution. *In re Marriage of Verdung*, 126 Ill. 2d 542, 555, 535 N.E.2d 818, 824 (1989). Thus, on February 19, 2019, when the circuit court approved the judicial sale and ordered the distribution, Torres could appeal the foreclosure judgment. Torres filed the fourth appeal the very next day, on February 20, 2019. No other matters were pending in the trial court when Torres filed the fourth appeal on February 20, 2019. Torres's fourth appeal was, therefore, an effective appeal from a final and appealable judgment order. Torres, however, twice asked to dismiss the fourth appeal. This court treated Torres's first motion to dismiss the appeal as a motion to stay the appeal, but accepted Torres's second motion as a motion to dismiss and on August 19, 2019, granted Torres's request. When Torres did not file a petition for rehearing within 21 days, the dismissal order became final and the appellate court lost jurisdiction to consider an appeal from the foreclosure order. *Woodson v. Chicago Board of Education*, 154 Ill. 2d 391, 397, 609 N.E.2d 318, 321 (1993); Ill. S. Ct. R. 367 (eff. Nov. 1, 2017) (indicating an appellate court loses jurisdiction of an appeal if no petition for rehearing is filed within 21 days of the appellate court's judgment). In other words, by dismissing the appeal from the final judgment order in the underlying foreclosure, Torres forfeited the right to our review of the trial court orders issued in the foreclosure action.

¶ 36    Accordingly, our review is limited to the section 2-1401 proceeding. Torres chose to pursue further relief in the trial court with the assistance of counsel who filed documents in the trial court on April 8 and 9, 2019. Section 2-1401 "authorizes a party to seek relief from a final judgment, such as a default judgment, when brought more than 30 days after judgment has been entered." *Sarkissian v. Chicago Board. of Education*, 201 Ill. 2d 95, 102, 776 N.E.2d 195, 200 (2002) (citing

*Smith v. Airoom*, 114 Ill. 2d 209, 499 N.E.2d 1381 (1986); 735 ILCS 5/2-1401(a) (West 2000)). A section 2-1401 petition, however, presents "a new proceeding, not a continuation of the old one." *Sarkissian*, 201 Ill. 2d at 102, 776 N.E.2d at 200. A section 2-1401 proceeding is "separate from the proceeding in which the judgment was rendered." *Krol v. Wincek*, 258 Ill. App. 3d 706, 708, 630 N.E.2d 1021, 1023 (1994); *Niemerg v. Bonelli*, 344 Ill. App. 3d 459, 464, 800 N.E.2d 86, 89-90 (2003) ("although a section 2-1401 petition must be filed in the same proceeding in which the judgment sought to be vacated was entered, it is not a continuation thereof but is a new proceeding."). "A section 2-1401 petition is addressed to the equitable powers of the trial court and allows a party to bring before the court matters unknown to the party and the court at the time of the judgment which would have precluded its entry. (Internal citations omitted.) *Krol*, 258 Ill. App. 3d at 708, 630 N.E.2d at 1023.

¶ 37    Like any complaint, the section 2-1401 petition must be legally sufficient in affirmatively setting forth specific allegations supporting the petitioner's right to relief. *Airoom*, 114 Ill. 2d at 220-21, 499 N.E.2d at 1386. More specifically, a factually sufficient petition is one that includes allegations of (1) a meritorious defense or claim in the original action and the petitioner's due diligence in both (2) presenting the claim or defense and (3) filing the section 2-1401 petition. *Airoom*, 114 Ill. 2d at 220-21, 499 N.E.2d at 1386. Like a complaint, the petition may be challenged by a motion to dismiss for its failure to state a cause of action or if, on its face, it shows that the petitioner is not entitled to relief. *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 279-80, 433 N.E.2d 253, 256 (1982). A section 2-1401 petition is the filing of new action "and it is necessary, as in any civil case, that the petitioner allege and prove a right to the relief sought." *Brockmeyer v. Duncan*, 18 Ill. 2d 502, 505, 165 N.E.2d 294, 296 (1960) (discussing section 2-

1401 as it was previously numbered, section 72). "Where the [section 2-1401] petition fails to state a cause of action or shows on its face that the petitioner is not entitled to the relief sought, it is subject to a motion to dismiss." *Brockmeyer*, 18 Ill. 2d at 505, 165 N.E.2d at 296.

¶ 38    Torres's section 2-1401 petition consisted of one document that Torres's attorney filed on April 8, 2019, and an additional document that Torres's attorney filed on April 9, 2019. We will address these in turn because they present two separate arguments.

¶ 39    In the April 8th document, it was argued that the trial court had retroactively lost subject matter jurisdiction and must void the judicial deed to the highest bidder. The April 8th document was entitled "VERIFIED MOTION TO VACATE 2.19.19 ORDER OF POSSESSION AND TO VOID 4.3.19 [JUDICIAL] DEED FOR LACK OF SUBJECT MATTER JURISDICTION." Under this title, it was alleged that "the 2.19.19 Order of Possession, is invalid on its face," because after the foreclosure judgment was entered in 2018, there had a been a judicial sale of the property in 2019, and a deed was issued in 2019 to the highest bidder, but Torres's new attorney could not find the name of that highest bidder in April 2019 "at the Illinois Secretary of State nor on Google." Torres argued this rendered the deed issued to that highest bidder and recorded on April 3, 2019 to be "invalid on its face and ineffective to transfer anything, and the 2.19.19 order void for the same reason." There was no citation to authority indicating that counsel's inability to find a name in a database was reason to doubt the trial court's subject matter jurisdiction on a prior date. Torres's April 8th filing did not present the type of argument that is authorized by section 2-1401. "The purpose of a section 2-1401 petition is to bring before the trial court facts not appearing in the record which, if known to the trial court *at the time judgment was entered*, would have prevented the judgment." (Emphasis added.) *Blutcher v. EHS Trinity Hosp.*, 321 Ill. App. 3d 131,

135-36, 746 N.E.2d 863, 868 (2001); *Krol*, 258 Ill. App. 3d at 708, 630 N.E.2d at 1023. In 2018, the trial court entered a foreclosure judgment and ordered the sale of real property, based on records indicating Torres had not paid a debt she owed to Wells Fargo for a loan she obtained in 2007. The trial court later confirmed the sale of that property to the highest bidder. Torres argued in the April 8th filing that if the trial court had known when it confirmed the sale that her subsequent attorney would have difficulty locating information about the highest bidder, then the trial court would not have confirmed the sale. This is not a defense, let alone a meritorious defense, to the order confirming the sale, nor is it a defense, let alone a meritorious defense, to the foreclosure judgment and the order to sell the property. Torres did not attempt to satisfy the first of the three essential prongs of a section 2-1401 petition. We need not address the two other prongs. The April 8th document is not grounds for us to find that the trial court erred in granting Well Fargo's motion to dismiss Torres's section 2-1401 petition as deficient.

¶ 40    The April 9th document did not concern an attorney's search into the name of the highest bidder. Instead, it concerned a one-page document that Torres argued released the debt at issue. However, the April 9th document does not indicate that Torres was duly diligent in presenting this alleged release. The release that was tendered on April 9th is not the same release that Torres had filed and argued in the earlier proceedings. This was a new document submitted for the first time on April 9th. "Due diligence requires the section 2-1401 petitioner to have a reasonable excuse for failing to act within an appropriate time." *Airoom*, 114 Ill. 2d at 222, 499 N.E.2d at 1386. Thus, the petitioner must show that the "failure to defend against the [underlying] lawsuit was the result of an excusable mistake and that under the circumstances he acted reasonably, and not negligently, when he failed to initially resist the [underlying] judgment." *Airoom*, 114 Ill. 2d at 222, 499 N.E.2d

at 1386. Torres did not attempt to make this showing to the trial court. Torres's April 9th filing stated in its entirety:

> "VERIFIED MOTION TO ENTER JUDGEMENT IN FAVOR OFDEFENDANTS AND VACATE ALL ORDERS FOR LACK OF SUBJECT MATTER JURISDICTION
>
> NOW COMES DEFENDANTS, by and through Defendants' undersigned Counsel, and respectfully MOVE this Court to DISMISS this matter for lack of jurisdiction due, inter alia, there being in existence releases for both the 2004 and 2007 alleged loans on which this matter appears to be based[1], and state in support that the attached release (Exh. 1) divested and divests this Court of legal and equitable jurisdiction as the claim, if valid, was satisfied prior to filing of this lawsuit.
>
> Wherefor, the Deed of Record being invalid on its face and ineffective to transfer anything, and the 2.19.19 Order void for the same reason, and this Court having no original or other jurisdiction as a result of the attached release of the loan(s) sued on. Defendants MOVE the Court to:
>
> A. Vacate the 2.19.19 Order;
>
> B. Void the deed recorded 4.3.19;
>
> C. Vacate All other Orders Against Defendants;

---

[1] Torres incorrectly stated that the foreclosure action Wells Fargo filed in 2016 was based on separate loans that Torres obtained in 2004 and 2007. As we summarized at the outset of this order, the foreclosure complaint instead indicates that Torres had defaulted on a loan she obtained on February 7, 2007. The foreclosure complaint specified that her husband Noel was a "non-borrowing spouse" who had joined the 2007 security instrument "for the sole purpose of *** waiving any current or potential interest in the Property" and that he was being named as a co-defendant in order to terminate any homestead rights he had in the real estate. A release regarding a 2004 loan would have no bearing on Torres's 2007 loan.

D. Enter Judgement in Favor of Defendant Torres's

E. Grant leave to file a motion for sanctions and attorneys fees.

F. If this Court will not grant that relief, undersigned respectfully requests a finding that the denial is appealable as if a final order in the case."

¶ 41 Torres gave no indication, whatsoever, that the release attached to the April 9th filing could not have been presented earlier in proceedings and that Torres's failure to present it earlier "was the result of an excusable mistake and that under the circumstances [Torres] acted reasonably, and not negligently, when [Torres] failed to initially resist the [underlying] judgment." *Airoom*, 114 Ill. 2d at 222, 499 N.E.2d at 1386. The attached release bears the date of April 12, 2007, the foreclosure proceedings were filed on April 25, 2016, and thus, the purported release was available throughout the foreclosure action. The record indicates the underlying foreclosure action lasted nearly three years and that Torres was well-versed in the procedures for filing and presenting documents to the court. Because there was no explanation for why Torres did not present the new release prior to the final judgment entered on February 19, 2019, we find that Torres failed to establish due diligence in presenting a meritorious defense.

¶ 42 We also find that even when the April 8th and April 9th theories are considered together, Torres failed to present a sufficient section 2-1401 petition. Nothing that Torres filed or argued in April 2019 indicates that the trial court erred in granting Wells Fargo's motion to dismiss.

¶ 43 We next consider the crossmotions for sanctions, beginning with the first that was filed, the Wells Fargo motion.

¶ 44 Wells Fargo seeks sanctions for the motion Torres filed January 8, 2019, asking that we set aside our routine order dated December 30, 2019 granting Wells Fargo's motion for an extension

of time to file its appellate brief, even though Torres did not oppose the motion when it was first filed. Wells Fargo argues that it is apparent Torres filed the motion to reconsider the briefing schedule for the improper purpose of causing delay, harassment, or needless expense to Wells Fargo. Wells Fargo argues that Torres has "made meritless filing after meritless filing in a bad-faith attempt to forestall the foreclosure and attendant eviction" and that the motion was just "the latest in a long line of vexatious, inflammatory, and frivolous filings in this case."

¶ 45      Wells Fargo points to numerous allegations in the motion which Wells Fargo contends are blatantly false and made in bad faith. For instance, Torres included the previous allegations, which lacked any factual support, that the foreclosure action was part of a discriminatory campaign targeting the most vulnerable of society based on race, color, ethnicity; and also gender and disability. Wells Fargo contends another false and unsupported allegation is that the foreclosure action was based on forged documents. Wells Fargo emphasizes that the allegations of forgery are not new for Torres, as they employed the same tactic in another foreclosure case over 20 years ago. In 1983, Torres obtained a $100,000 small business loan from the Small Business Administration ("SBA"). *United States for and on Behalf of the Small Business Admin. v. Torres*, 142 F.3d 962, 964 (7th Cir. 1998), *overruled on other grounds in Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). The SBA loan was secured by a mortgage and Torres defaulted on the loan. *Torres*, 142 F.3d at 964. In the foreclosure proceeding, Torres alleged that the SBA had forged signatures on a mortgage document. *Torres*, 142 F.3d at 968. The federal district court, relying in part on an affidavit from a forensic document expert, concluded no forgery had occurred, and the Seventh Circuit affirmed. *Torres*, 142 F.3d at 968. The Seventh Circuit also affirmed the district court's findings that Torres had committed civil contempt by "attempt[ing] to deceive the court"

through the "introduction of fraudulent documents and testimony" (*Torres*, 142 F.3d at 964), which the Seventh Circuit characterized as "blatant and most disingenuous" (*Torres*, 142 F.3d at 965, n6). Wells Fargo also cites other false and unsupported allegations, which Torres has repeated during the litigation, including that Well Fargo informed Torres that it "own[s] the courts and the Clerk's office;" Wells Fargo committed "theft of Rosee Torres IRA retirement account," Wells Fargo threatened Torres with arson, arrest, imprisonment, and deportation, Torres never had a mortgage with Wells Fargo, and the mortgage loan was paid in full.

¶ 46     Illinois Supreme Court Rule 375(b) states that when an appeal or "other action" is "not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," the court may impose an "appropriate sanction," which may include "an order to pay to the other party or parties damages," or "the reasonable costs of the appeal or other action." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). An appeal or "other action" is frivolous when "it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). An appeal or "other action" will be "deemed to have been taken or prosecuted for an improper purpose where the primary purpose of the appeal or other action is to delay, harass, or cause needless expense." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). The fact that a party is *pro se* does not excuse compliance with Rule 375(b). *See Wittekind v. Rusk*, 253 Ill. App. 3d 577, 582-83, 625 N.E.2d 427, 429-30  (1993) (imposing sanctions for frivolous appeal on a *pro se* party for bringing an appeal that was not "well grounded in fact or warranted by existing law"); *see also Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 87, 2 N.E.3d 1052 ("Sanctions may be awarded against *pro se* litigants under sufficiently egregious circumstances.").

¶ 47 Our review of the record supports Wells Fargo's contention that Torres's request to reconsider the briefing schedule was not well grounded in fact. The allegations of forgery, discrimination, "own[ing] the courts," and threatening violence, arson, and deportation are totally unsupported and specious. Torres has never provided any evidence beyond self-serving statements that any of this misconduct actually occurred. Torres's motion to reconsider was also not warranted by existing law or good faith argument for the extension, modification, or reversal of existing law. Torres cited no authority that would warrant our reconsideration of a routine extension of the briefing schedule.

¶ 48 We agree with Wells Fargo that Torres filed the motion for an improper purpose of delaying, harassing, or causing needless expense to Wells Fargo. "Frivolous litigation wastes time, money, and resources that could be better spent addressing potentially meritorious claims filed by good-faith litigants." *Johnson v. Williams*, 2016 IL App (3d) 150824, ¶ 10, 60 N.E.3d 134 (citation omitted).

¶ 49 We grant Wells Fargo's motion to sanction Torres. Within 21 days of this order, Wells Fargo shall submit a fee petition detailing the amount it spent responding to Torres's frivolous motion to reconsider the order granting Wells Fargo additional time to file its appellate brief. Within 21 days of that filing, Torres may submit a response regarding Wells Fargo's fee petition.

¶ 50 Torres's request for sanctions relies on the same unfounded and inflammatory allegations that Wells Fargo "continue[s] an on-going misconduct of exploitation, threats, blackmail and extortion in their attempt to steal *** property through their racially and ethnically discriminatory policies and practices." We find Torres's motion for sanctions itself to be frivolous. We deny Torres's request for sanctions without further comment.

¶ 51    In conclusion, we affirm the trial court's denial of Torres's section 2-1401 petition, grant

Wells Fargo's motion to sanction Torres, and deny Torres's motion to sanction Wells Fargo.

¶ 52    Affirmed; Wells Fargo's motion taken with case granted; Torres's motion taken with the

case denied.